[No. 18128.   Department One.   March 3, 1924.]

# MOSES LAKE STATE BANK, *Appellant,* v. FRANK T. BELL, *as Treasurer of Grant County, Respondent.*[1]

BANKS AND BANKING (12) — REPRESENTATION BY OFFICERS OR AGENTS—DEPOSITS—ACCEPTANCE AWAY FROM BANK—LIABILITY. A deposit must be made at the bank's usual place of business, to charge it with liability as for a general deposit, especially in view of Rem. Comp. Stat., § 3222, prohibiting the establishment of branches, and providing that the practice of collecting or receiving deposits at any place other than the usual place of business shall be held to be establishing a branch.

SAME (12, 16)—OFFICERS AND AGENTS—ACCEPTANCE OF DEPOSITS— RATIFICATION. The claim of a general deposit, made elsewhere than at the bank's usual place of business by giving a check to a collecting agent, is not ratified by the bank by giving credit for it as such on the books of the bank, where neither the check nor the proceeds was ever received by the bank or any of its officers or by its correspondent bank to whom it was said to have been mailed.

SAME (12, 16).   Such a claim of a general deposit in the sum of $2,500, made by a county treasurer, is not ratified by the bank's receipt of additional securities of the face value of $2,000, to secure deposits of county funds made, or to be made, where its purpose, like all other securities deposited, was to secure any or all deposits of county funds made with the bank.

APPEAL (145)—PRESERVATION OF GROUNDS—EXCEPTIONS TO FINDINGS. In an equitable case, in which findings of fact are not essential and are not made, the statement of facts will not be stricken because the recital of facts in the decree were not excepted to, where, assuming the facts as recited, the decision would be the same, and the statement of facts contains facts not mentioned in the recitals.

Appeal from a judgment of the superior court for Grant county, Hill, J., entered March 28, 1923, dismissing an action for an injunction, after a trial on the merits to the court.   Reversed.

[1]Reported in 223 Pac. 587.

*Daniel T. Cross, William W. Clapp, Guy B. Groff,* and *William Hatch Davis,* for appellant.

*N. W. Washington,* for respondent.

PARKER, J.—The plaintiff bank commenced this action in the superior court for Grant county against defendant Bell, as treasurer of that county, seeking an injunction restraining him from selling certain securities deposited with him by the plaintiff to secure deposits of county funds made by him with the plaintiff bank. The real controversy is over a claim of deposit of $2,500 made by the defendant which the plaintiff claims was never made so as to render it liable therefor. The plaintiff tendered to the defendant payment of all other deposits of county funds made with it. A trial upon the merits resulted in a decree denying to the plaintiff the relief prayed for, from which it has appealed to this court.

The controlling facts, as we see them, may be summarized as follows: Appellant's banking house is located at Neppel, in Grant county, some twenty miles or more from Ephrata, the county seat of that county. During the period in question, and for several years prior thereto respondent county treasurer kept on deposit a portion of the county funds in appellant's bank; appellant at the same time keeping on deposit with respondent, as county treasurer, securities to secure such deposits, in compliance with § 5563, Rem. Comp. Stat. On September 28, 1922, one Mackenzie, who was then employed by appellant to make collections and keep up its reserve, but who was not then an officer of appellant, applied to respondent, as county treasurer, at his office in Ephrata, for an increased deposit of county funds in appellant's bank. Thereupon respondent drew a check against county funds on deposit

with the Grant County Bank located at Ephrata.   This check was for $2,500 and was made payable to the order of appellant, and was then and there delivered to Mackenzie by respondent.   Mackenzie went immediately with the check to the Grant County Bank and asked for a draft for the amount of the check.   The assistant cashier of that bank then told Mackenzie that it would help their exchange if he would send the check through appellant's correspondent bank in Spokane and let it come through in usual course.   Mackenzie then and there endorsed the check in blank as cashier of appellant bank, though he was not such cashier, and enclosed it with a credit slip in a stamped and sealed envelope addressed to the Fidelity National Bank of Spokane, that being appellant's correspondent bank. Mackenzie testified that he then placed the stamped envelope containing the check and credit slip in a basket in the Grant County Bank used by that bank for outgoing mail.   Thereafter appellant gave credit to respondent as county treasurer upon its books as for a general deposit in the sum of $2,500.   There is nothing, however, in this record to show that appellant ever at any time gave to respondent any credit slip, or any credit in any passbook which respondent may have had, or any other writing, evidencing such deposit in appellant's bank.   In so far as the record speaks at all upon this question, it warrants the conclusion that no credit for this claimed deposit was ever evidenced other than upon the books of the bank, of which respondent was never advised.   The check and the credit slip claimed by Mackenzie to have been placed in the sealed and stamped envelope and deposited in the outgoing mail box in the Grant County Bank never went into the mail, never reached appellant's correspondent in Spokane, and never was in appel-

lant's banking house at Neppel; nor was it ever in possession of any officer of appellant.

On the 10th day of October, 1922, the Grant County Bank passed into the hands of the state supervisor of banking because of its insolvency. Thereafter the stamped and sealed envelope containing the check and credit slip, claimed to have been deposited in the Grant County Bank's outgoing mail basket by Mackenzie on the day he received the check, was found in the banking room of the Grant County Bank. How it came to the place at which it was found, and where it had been since Mackenzie claims to have put it in the basket of the outgoing mail of that bank, we are not informed. About the time of the giving of the check in question by respondent to Mackenzie, or soon thereafter, appellant, evidently in anticipation of the increase of the deposit of county funds in its bank, sent to respondent securities of the face value of $2,000, as further security for the deposit of county funds in its bank. The record does not warrant any assumption in this connection other than that such additional deposit of securities by appellant with respondent was general and not special; that is, that such securities were not deposited to secure any particular deposit of county funds in appellant's bank.

On or about October 18, 1922, after the stamped envelope containing the check had been found in the banking room of the Grant County Bank, appellant charged off of its books the credit of $2,500 which had theretofore been entered as a deposit credit in favor of respondent. Thereafter, by check drawn in due form by respondent and presented to appellant at its bank, appellant refused to honor such check for the full amount for which it was drawn, which was the entire balance of county funds claimed by respondent to be

in appellant's bank; that is, appellant refused to recognize the $2,500 claimed deposit credit in favor of respondent and to that extent refused to honor the check. Thereafter respondent threatened to sell the securities deposited with him by appellant, in satisfaction of his claimed deposit of $2,500. Thereupon this action was commenced seeking the restraining of such sale, resulting as above noticed.

It is contended in behalf of appellant that respondent's claimed deposit of $2,500 represented by the check delivered to Mackenzie, was never consummated so as to render appellant liable therefor. We have seen that the claimed deposit was not made at appellant's bank, nor was the check or the proceeds thereof ever received at appellant's bank; more than that, it was never delivered to any officer of appellant even away from appellant's bank; nor, as we feel warranted in assuming, was respondent ever given any written evidence in the form of a credit deposit slip, a credit upon his pass-book or otherwise, for any such deposit. It seems to be well settled banking law that, in order to charge a bank with liability as for a general deposit, the deposit must have been actually made at the banking house of the bank sought to be so charged; and that when a would-be depositor of a bank places his funds, whether in the form of cash, checks or drafts, in the hands of another at some place away from the bank, even though such other person be an officer of the bank, there is not thereby consummated a deposit chargeable as such against the bank, however much the would-be depositor and such other person may have intended such act as consummating a deposit. Such act goes no farther in its legal effect than to make the person so receiving such funds an agent of the would-be depositor to cause such funds to be actually deposited

in the bank at its usual place of doing business. The rule is well stated in 1 Morse on Banks and Banking (5th ed.), in § 168, as follows:

". . . unquestionably a cashier may follow up a delinquent or doubtful debtor of the bank, and exact payment from him at any time and place when and where he may be able to do so. But where money is offered for credit on a deposit account it is clear that it should not be accepted away from the bank. The bank does not contemplate any such method of receiving deposits, but has provided an entirely different system. Clearly, therefore, it does not empower its cashier thus to receive them. He cannot bring them instantly to account in the bank, nor secure them with the safeguards always provided in banks for the preservation of their funds. But if he does so receive them, and then loses or misapplies them before he has actually transferred them into the corporate possession, the question arises, Can the payer hold the bank to make good the amount? Clearly, we say, he cannot. Even though the cashier may have had the identical money in his pocket at and after the time of his return to the bank, nothing short of his actual transfer over and bringing it to account in the bank can make the bank liable. . . . He was the agent of the payer for this purpose, selected as a convenient agent because he was also an agent of the bank. The money was paid to him doubtless *because* he was cashier, but it was not paid to him *as* cashier. The latter character could not be given to the transaction, even if both parties sought to do so; for they must both be affected with knowledge of the rule of law which renders a payment made under such circumstances irregular and improper, and so invalid as against the bank. It is fair then to say that in no part of the transaction can it be admitted that the cashier was acting officially, even though irregularly so. His act should be regarded, not as irregularly official, but as absolutely unofficial. Therefore the obligation which he owed to pay the money into the bank ran to the party paying it to him for that purpose, not to the bank; his breach of it would make him liable to that party, not to the

bank; the loss arising from the breach must be borne by that party, who was in fact his principal in the agency, not by the bank, which was known to all concerned to have strictly excluded any such function from the scope of his official agency.''

This we conceive to be the law in the absence of statute touching the subject. Our banking statutes, however, render it even more conclusive as the law in this state. In § 3222, Rem. Comp. Stat. [P. C. § 265], we read:

''No person shall engage in banking except in compliance with and subject to the provisions of this act, . . . nor shall any bank or trust company establish any branch. The practice of collecting or receiving deposits or cashing checks at any place or places other than the place where the usual business of a bank or trust company and its operations of discount and deposits are carried on shall be held and construed to be establishing a branch.''

Thus it is rendered apparent that it is not lawful for a bank to receive deposits other than at its usual place of doing its banking business.

It is further contended that appellant ratified the claimed deposit of $2,500 as a general deposit in favor of respondent by the giving of credit to respondent therefor as a general deposit upon its books. We have seen that, while appellant apparently did give credit to respondent for $2,500 as a deposit upon its books, it never gave to respondent any evidence of such credit, and besides, that neither the check nor the proceeds thereof ever passed into the possession of appellant or any of its officers, nor did the check ever reach appellant's correspondent in Spokane so that appellant could there have received credit for it. In other words, appellant received nothing, nor did any of its officers ever receive anything for it as the result of the giving

of the check by respondent to Mackenzie. We are of the opinion that the mere giving of credit upon the books of appellant to respondent for $2,500 as a general deposit did not constitute a ratification in law of the making of this claimed deposit, the proceeds of which neither appellant nor any of its officers ever received in any form whatever.

Some contention is made that the claimed $2,500 deposit was ratified by appellant giving to respondent additional securities of the face value of $2,000 to secure deposits of county funds made or to be made with appellant. We think the record fully warrants us in assuming that this deposit of additional securities was not for the purpose of securing this particular $2,500 deposit, but, like all other securities, deposits made by appellant with respondent, was for the purpose of securing any or all deposits theretofore or thereafter made of county funds with appellant. We think this additional deposit of securities by appellant with respondent did not constitute a ratification of the claimed $2,500 deposit.

Some contention is made that we should strike the statement of facts, motion being made by respondent in that behalf; this, upon the theory that findings of fact made by the trial court have not been excepted to. This, of course, is plainly a case of purely equitable cognizance, and therefore findings of fact were unnecessary to support the decree. The recitals in the decree do state a number of facts as though found to exist by the trial court. They are, however, stated in a somewhat informal manner, as facts are often stated by a judge in announcing reasons for his opinion preliminary to the rendering of judgment. It may be conceded for present purposes that in so far as such recitals in this decree plainly state facts as the trial court

conceived them to exist, we must now assume such facts to exist as though formally found. This we have done in our above statement of what we deem to be the controlling facts. Our statement of the facts is not at all inconsistent with the trial judge's recital of facts in the decree. We have only stated some few additional facts shown by the record, as to which the trial judge made no findings. We conclude that there is no occasion for our ignoring the statement of facts, and that it is proper that we should consider it as a part of the record, to the end that we be advised of facts not mentioned in the trial judge's recitals in the decree.

The decree of the trial court is reversed and the cause remanded to that court with instructions to award to appellant injunctive relief as prayed for; that is, the restraining of respondent from selling any part of the securities in satisfaction of any portion of the claimed $2,500 deposit.

MAIN, C. J., HOLCOMB, TOLMAN, and MACKINTOSH, JJ., concur.