STATE OF NEBRASKA v. AMERICAN STATE BANK OF AURORA. A. F. ACKERMAN, RECEIVER, APPELLANT, v. NATIONAL AMERICAN FIRE INSURANCE COMPANY, CLAIMANT, INTERVENER, APPELLEE.

FILED JUNE 24, 1924. No. 23710.

1. **Banks and Banking:** DEPOSIT. Actual money is not necessarily a prerequisite of a "deposit" within the meaning of the bank guaranty law.

2. ——: RESERVE FUND. Liberty bonds of the United States may be received and held by a state bank at their face value for the purpose of creating or maintaining the reserve fund required by law.

3. ——: DEPOSIT: LIBERTY BONDS. In absence of wrong-doing on the part of a depositor, liberty bonds of the United States

may be received as a deposit at par by a state bank in exchange for time certificates of deposit in an equal amount.

4. ———: AGENCY. There may be exceptions to the general rule that a banker who receives a deposit while absent from his place of business is, for the purpose of delivery, the agent of the person from whom he receives it

5. ———: ———. A banker in exclusive control of his bank may, under exceptional circumstances, be considered its agent from the time he exchanges, while absent, its time certificates for a deposit of liberty bonds of the United States, where the depositor acts in good faith.

6. ———: GUARANTY FUND: ALLOWANCE OF CLAIM. Depositor's claim against an insolvent bank *held* payable out of the bank guaranty fund under the facts stated in the opinion.

APPEAL from the district court for Hamilton county: GEORGE F. CORCORAN, JUDGE. *Affirmed.*

*Charles E. Matson* and *C. M. Skiles,* for appellant.

*Isidor Zeigler* and *Hainer, Craft, Edgerton & Fraizer,* contra.

*Butler & James, amici curiæ.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DAY and GOOD, JJ.

ROSE, J.

This is a controversy between A. F. Ackerman, receiver of the American State Bank of Aurora, an insolvent corporation, and the National American Fire Insurance Company, claimant, as a depositor. An officer of the state took charge of the bank in an insolvent condition March 17, 1920, and Ackerman went into possession as receiver May 14, 1920. In a proceeding to wind up the affairs of the bank, claimant pleaded a deposit of $15,000, evidenced by three time certificates dated December 16, 1919, each for $5,000, all bearing interest at the rate of 4 per cent. per annum and maturing respectively in four, eight and twelve months. The regular blank forms of the American State Bank were used in drawing the certificates. They were signed for the bank by Charles W. Wentz, vice-president,

and claimant was named as depositor. The relief sought herein was the allowance of the claim as a deposit payable out of the bank guaranty fund. The receiver resisted the claim on the ground that the certificates did not represent such a deposit. Upon a trial of the issues raised by the pleadings, the district court allowed the claim to the extent of $13,704.68, with 'interest, and made it payable out of the bank guaranty fund. The receiver has appealed.

Did the certificates represent a deposit within the meaning of the bank guaranty law? Charles W. Wentz, vice-president and managing officer of the American State Bank of Aurora, went into the office of claimant at Omaha December 16, 1919, and applied on behalf of that bank for a deposit of $15,000. When told, as he was, that claimant could not make a deposit of $15,000, he said liberty bonds of the United States could be accepted on the basis of cash. Claimant then agreed to make such a deposit and turned over to Wentz liberty bonds amounting on their face to $15,000, receiving from him the three certificates of deposit in controversy, aggregating $15,000. Instead of depositing the bonds in the American State Bank of Aurora on the basis of cash, Wentz immediately transferred them to the United States Trust Company of Omaha for $13,704.68, which he deposited in the United States National Bank of Omaha to the credit of the Wentz Company, a corporation dealing in real estate, farm loans, mortgages and insurance, and transacting business at Aurora under his exclusive control in the rooms occupied by the American State Bank.

It is first argued that claimant left no money in the American State Bank as a deposit subject to check or as a basis for a time certificate. It has recently been held that "the presence of the actual money is not a prerequisite to a deposit." *State v. Banking House of A. Castetter*, 110 Neb. 564; *State v. American State Bank*, ante, p. 182. Liberty bonds are interest-bearing securities of a high order. Fraud or dishonesty on the part of claimant, because it exchanged liberty bonds at par for the certificates of deposit, is not a proper inference from the evidence. It seems

equally clear that the conduct of Wentz in converting the liberty bonds into cash at a discount was not imputable to claimant. Rascality often casts suspicion on the innocent, but the truth, not suspicion, is the goal of judicial inquiry into the facts, and on this phase of the litigation the evidence shows that claimant had no part in any of the wrongs committed by Wentz. This view of the evidence extends also to a contention that the transaction was the result of a conspiracy to exact an illegal rate of interest on the certificates of deposit and to defraud the American State Bank.

Other propositions ably presented by counsel for the receiver may be summarized as follows: In accepting the liberty bonds for deposit, Wentz was the agent of claimant. He did not act for or in the interests of his bank and any loss resulting from his failure to deposit the liberty bonds therein falls on his principal, the claimant. Banks do not contemplate the receiving of deposits outside their places of business and do not become liable as bankers before the deposits are delivered. In this connection it is insisted that neither the deposit nor its equivalent was received at the American State Bank to its credit, and that therefore it is not liable to claimant as a depositor. The law thus invoked by the receiver is sound in principle and should not be relaxed, but there are exceptions to the general rule. If a cashier should leave his bank during an unreasonable run, procure from other banks, on certificates of deposit issued by him while absent, funds which stop the run, save his bank, protect unpaid depositors and prevent a public disaster, would he be the agent of a bank whose currency under such circumstances was lost in transit? In the situation assumed the initial transactions, though identical in character, would result in the protection of a depositor in one instance and in a loss in another. It would be a strange rule indeed that would sanction such a doctrine. To prevent anomalies like that, exceptions to general rules are recognized.

Whether the present controversy falls within an exception is the question to be determined. Wentz had exclusive control of the Wentz Company. As vice-president of

the bank he managed its business. No other person connected with it assumed to interpose any objections to his will. Both corporations were chartered by the state, and their office, counter, vault and safe were used in common. The business of the two corporations was more or less intermingled. Wentz used both concerns for his own purposes. When he left the bank he took with him the knowledge and mind that controlled it. In a sense he was both institutions wherever he went. The danger of one was the danger of the other. When both were in a precarious condition, Wentz, as he had done before, went to claimants' office in Omaha and there exchanged time certificates of his bank for a deposit. The better view of this transaction is that he was the agent of the bank, acting in its interests. In contemplation of law the liberty bonds received by him and the proceeds thereof belonged to his bank. The district court found, and the evidence fairly shows, that the deposit of $13,704.68 to the credit of the Wentz Company in the United States National Bank of Omaha eventually went into the American State Bank in the form of liberty bonds returned for correction, of credit in other banks, or of deposits reducing overdrafts of the Wentz Company. This method of transacting business and the control of Wentz were not disturbed by the exercise of any function on the part of other executive officers or directors of the American State Bank. Having in those relations no useful existence for the purpose of conducting a legitimate banking business, why should they be permitted to assume official connections with the bank for the sole purpose of asserting lack of knowledge and of defeating the claim of an honest depositor who had no part in the iniquity of Wentz? The general rule invoked by the receiver grew out of the necessities of legitimate banking. In the ordinary course of business a bank, as contended by the receiver, contemplates the receipt of deposits at its place of business where its funds are controlled and protected by officers and agents who perform their duties, but the claim in controversy falls within an exception and cannot be adjudicated under the general rule without defeating justice. In various forms, as

already explained, proceeds of these bonds to the extent of $13,704.68 ultimately went into the bank. In allowing the claim for that amount and in making it payable out of the bank guaranty fund the district court did not err. While the receiver resisted the claim in good faith on grounds that seemed to him to be substantial, the better view of the facts and the law is the one taken by the district court.

AFFIRMED.

GOOD, J., dissents.

Note—See Banks and Banking, 7 C. J. p. 485, sec. 15 (1925 Ann.) ; p. 486, sec. 16; p. 648, sec. 338 (1925 Ann.) ; p. 637, sec. 318.