153 So. 420

**NATION v. MONTGOMERY, Superintendent of Banks.**

**6 Div. 430.**

Supreme Court of Alabama.
March 8, 1934.

C. J. Griffith, of Birmingham, for appellant.

J. T. Johnson, of Oneonta, for appellee.

**FOSTER, Justice.**

The purpose of this suit is to establish a claim against a state bank in liquidation, after it has been rejected by the superintendent of banks. Sections 6311, 6312, Code.

The evidence shows that on and prior to November 24, 1930, A. A. Fendley was president of Blount County State Bank and also president of Oneonta Guaranty Company. The business offices of the two institutions adjoined, connected by a door in the rear of the partition wall. Mr. Fendley was accustomed to transact his duties for them both from his office in the room of the Oneonta Guaranty Company, where he would sometimes receive money for deposit in the bank, and sometimes receive money for credit on amounts due the bank, and send the money into the office of the bank with a memorandum or duplicate deposit slip.

No question is here raised as to his authority to do this, even after the business hours of the bank.

There are exceptions to the general rule that a banker who receives a deposit while absent from its place of business does so for the purpose of delivering the money to the bank as the agent of the person from whom he receives it. State v. Am. St. Bk., 112 Neb. 272, 199 N. W. 501; 4 Michie on Banks & Banking, pp. 137, 138, § 24; 7 C. J. 637, §§ 318, 319; Fid. & Dep. Co. v. Colby, 148 App. Div. 363, 132 N. Y. S. 20; Jumper v. Commercial Bank, 48 S. C. 430, 26 S. E. 725; 1 Morse on Banks & Banking, § 143, p. 377 (e).

We will therefore consider the question as one of fact, for it is so treated by counsel.

Appellant's claim is that he paid to Mr. Fendley, as president of the bank for it, $1,600 at night, long after business hours, in the office of Oneonta Guaranty Company, and that appellant received a receipt from him for that amount. He owed the bank approximately $500, and he claimed that the amount of the debt was thereby paid, leaving a balance for deposit to his credit in the bank. He sues now to establish as a claim the amount of the deposit.

Mr. Fendley died the next day by accident, and the bank went into liquidation the day following his death. No entry was made on the bank books of the transaction, nor evidence that the money reached the office of the bank or the liquidating agent. There was no one present when the alleged transaction occurred other than appellant and Mr. Fendley.

Since Mr. Fendley was acting as an officer of the bank, and in a representative capacity, and died the next day, appellant cannot now in this suit testify on his own behalf as to any transaction with or statement by the deceased. Section 7721, Code. There is therefore in this case no competent testimony as to such transaction, or that it occurred, except as may be shown by the alleged receipt and collateral circumstances not occurring between appellant and Mr. Fendley. The words of the receipt are spoliated so that it does not show on its face all that was written on it when executed, or whether it represents any such transaction as claimed by appellant. He testified that he had paid to Mr. Fendley $16.50 on October 23d of that year, also at night in the office of Oneonta Guaranty Company, but that he took no receipt for that amount, but did get a statement from the bank, which he testified was destroyed. The bank books show that he had credit for that amount on October 25th.

The court evidently concluded that the spoliated receipt was in fact one that was given on October 24th, so changed to justify the claim of a payment November 24th, of $1,600.

There was much evidence respecting the genuineness of it as of November for $1,600, and whether it had an addition of the character and word "& dpt." as indicating that it was for more than the amount of the note. The earmarks, which appear to justify its claim now as a receipt for $1,600, and its

date as of November, are some of the exact features which have been obliterated or made uncertain. For "Nov." appears what may be an 11, but showing marks of spoliation, and while the word "sixteen" remains on it (except with the "n" absent), whether that which followed it is "hundred" or "& 50/100," or something else, is also uncertain by reason of spoliation. Whether the character and abbreviation "& dpt." are in the handwriting of the deceased, as are the other words and figures, is in sharp dispute, and the evidence in material conflict.

The evidence does not show what Mr. Fendley did with the $1,600, if he received it. That it did not get into the vault of the bank or otherwise with its other funds, seems to be a fair inference from the evidence.

■■ There is evidence to corroborate appellant in his version of the spoliation of the receipt, and its appearance before that occurred. His version is not unreasonable. But the burden is on appellant to prove to the reasonable satisfaction of the court that he paid the $1,600 to Mr. Fendley, as president of the bank, and the spoliated receipt is the only evidence of that fact. There are circumstances which support it, and some which discredit it, as evidencing such payment. The burden was on appellant to show to the reasonable satisfaction of the court trying the issue that its altered condition was properly or innocently made. Section 7717, Code.

We cannot agree with the contention of appellant that the burden has been met and that we are reasonably satisfied about the matter one way or the other. Under such circumstances, appellant cannot have the relief sought. The circuit court so held, and we think without reversible error, and it is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.