[No. 2474–2.   Division Two.   May 16, 1978.]

GEORGE C. RAINS, JR., ET AL, *Respondents,* v. WILLIAM
B. LEWIS, ET AL, *Defendants,* TRANSAMERICA
LAND BANQUE CORPORATION, *Appellant.*

118

*Eugene A. Stock,* for appellant.

*Richard Headrick,* for respondents.

SOULE, J.—Transamerica Land Banque Corporation, also known as Transway Corporation, is the assignee of the defendants, William B. and Charlotte Lewis, and the only party pursuing this appeal.

The appeal is from a judgment entered on June 18, 1976, denying a number of defendants and Transamerica the right to reinstate a real estate contract which previously had been ordered forfeited by a judgment dated December 5, 1975. That forfeiture was subject to a right to reinstate

the underlying contract by making payment in full within 120 days of December 5, 1975. We affirm the judgment.

The operative facts are relatively simple although the history of the underlying contract and ensuing litigation is not.

On January 22, 1974, an action was started by plaintiffs to forfeit the contract which originally had been formed in 1967. A lis pendens was duly filed on the same day. On December 5, 1975, a judgment of forfeiture was entered. Transamerica was not a party of record at that time. However, it had taken a quit claim deed from defendants Lewis on December 3, 1974, which it recorded on January 2, 1975, and was therefore subject to the constructive notice provided by the lis pendens. As assignee and successor to Lewis, Transamerica desired to exercise its right to reinstate the contract within the grace period. To that end, it attempted to arrange financing.

The 120th day fell on Saturday, April 3, 1976. By its judgment of June 18, 1976, the trial court held that April 3, 1976, was the last day on which to exercise the right. However, on Monday, April 5, 1976, Transamerica tendered a check in full payment to plaintiffs' attorney in Port Angeles. The plaintiff, George C. Rains, Jr., obtained the check from his attorney on the morning of April 6. He did not expressly refuse the tender on the ground that the time to reinstate had expired. Rather, he immediately telephoned the Seattle bank upon which it was drawn and was informed that there were not sufficient funds in the account to cover it. Upon receiving this information, he drove to Seattle and about 2 p.m. displayed the unendorsed check to an appropriate bank employee who checked with the operations officer. The employee reported to Rains that there were no funds to cover it, and if presented, the bank would not honor it. Thereupon, Rains requested that the check be stamped "N.S.F." and returned to him, which was done.

Meantime, about noon on April 6, a representative of Transamerica had called C. Harry Norstrom, executive

vice–president of the bank, advised Norstrom that the subject check had been issued and that a cashier's check to cover it was available in Marysville, Washington, at the office of the attorney for Transamerica. Mr. Norstrom left the bank for the purpose of obtaining the cashier's check. After receiving it, he returned to the bank shortly after 2 p.m. and, for the first time, told the operations officer about the certified check. The operations officer then told Norstrom that the Transamerica check had already been presented for payment and that it had not been honored. It is not suggested that Norstrom had ever agreed with Transamerica to cover its check in the event that it was presented before funds were on deposit to cover it.

Norstrom immediately informed plaintiffs' attorney of the fact that funds were now available to honor the check and apparently they have remained available ever since. However, plaintiffs have consistently held to the position that whatever rights Transamerica may have had to reinstate the contract were lost because Transamerica did not meet the time limit established by the court and tendered a check without sufficient funds with which to pay it. The evidence of that position is found in the affidavit of George C. Rains, Jr., dated April 24, 1976:

> That they had substantial time to make arrangements for satisfaction of the Court order and failed to meet the statute of limitations established by the Court. Also, failing on April 5th and 6th to have funds on hand at the bank to cover said check, Transway Corporations knowingly tendered a check on April 5, 1976, being fully aware that at such time there were not sufficient funds on hand to cover said check.
>
> Since the money was not paid as directed, I request that all interest of the defendants and anyone claiming by or through them be forfeited, cancelled and extinguished.

On April 22, 1976, Transamerica moved to intervene in the original action. Affidavits of Norstrom and Rains were filed in connection with the motion. The application was denied. From the record we gather that the hearing on the

matter was on May 28, 1976, but the formal order denying leave to intervene was not signed until June 18, 1976, the date upon which the judgment confirming the previous forfeiture was also signed. That judgment recites that Transamerica appeared by its attorney in place of William B. Lewis.

The purpose of the attempted intervention was of course to enable Transamerica to become a party of record in an effort to protect whatever interest it had, including its right of appeal.

Three issues are presented by the appeal:

1. When the 120th day allowed for reinstatement falls on Saturday, does CR 6(a) operate to extend the time to the following business day?

2. (a) When a check for which there are not sufficient funds on deposit is tendered to reinstate a contract and, after the last day for reinstatement has expired, is personally taken by the payee to the bank on which it is drawn, there submitted for payment, marked "N.S.F." and returned to the payee after a search of the bank records reveals that insufficiency, is the court justified in confirming the previously entered judgment of forfeiture?

(b) Is the court so justified even though an officer of the bank acting at the behest of the maker of the check and while away from the bank had already received from the maker of the check sufficient funds to cover it but had not yet deposited it to the maker's account or in any way communicated with any personnel of the bank concerning the existence and his personal possession of the funds?

3. Was the trial court justified in refusing to permit Transamerica to intervene after the time for reinstatement had expired?

We do not reach the first issue relating to the effect of CR 6(a) upon the situation when the last day to reinstate falls on a Saturday. The plaintiff did not refuse initial tender of the check on this or any other ground. Because plaintiff unprotestingly accepted the check, an argument

could be made that he waived his right to thereafter disclaim that tender. The record is confused as to his intent in this regard and we prefer to base our holding on other grounds.

■ Upon the second issue, it must be remembered that a judgment or forfeiture had already been entered. The "final judgment" in this case was entered December 5, 1975. *Nestegard v. Investment Exch. Corp.*, 5 Wn. App. 618, 489 P.2d 1142 (1971). The order of June 18, 1976, confirming the forfeiture is a "final order after judgment." RAP 2.2(a)(13). Forfeitures are not favored in law and when such relief is sought, the court may exercise its discretion and grant a period of grace, setting terms whereby the contract can be reinstated. *State ex rel. Foley v. Superior Court*, 57 Wn.2d 571, 358 P.2d 550 (1961); *Dill v. Zielke*, 26 Wn.2d 246, 173 P.2d 977 (1946); *Ryker v. Stidham*, 17 Wn. App. 83, 561 P.2d 1103 (1977).

■ Such a period of grace was granted in this case and Transamerica, although not a formal party, was well aware of the terms and as successor to Lewis, could claim no greater rights than could Lewis. Now, because of the complications arising from the delicate state of its bank account, it is in effect asking for further equitable relief, which the trial judge in his discretion, denied. Based upon the record before us, including the lengthy history of the litigation, we are not prepared to find that the trial court abused its discretion. If Transamerica is to prevail, it must now be on the ground that its tender was legally adequate and that the dishonor of the check was improper.

We find that the dishonor of the check was proper and not the result of bank error, as urged by Transamerica.

It is undisputed that when the check was issued, the account was not sufficient to cover it. All agree that a check is, in any event, only conditional payment.

Defendant urges that the plaintiff did not properly negotiate the check or present it because he did not endorse it. Further, it is argued that had formal presentment been made, enough time lapse would have been involved so that

the account would have had sufficient funds. Mr. Norstrom would have returned to the bank with the covering certified check during the processing of the presented check.

This argument assumes that plaintiffs were required to make formal presentment. Formal presentment is governed by RCW 62A.3–501 through 506. However, RCW 62A.3–511 provides in part:

> (3) Presentment is also entirely excused when
>
> . . .
>
> (b) acceptance or payment is refused *but not for want of proper presentment.*

(Italics ours.) Official Comment 7, RCWA 62A.3–511 explains the reason in the following terms:

> Paragraph (b) of subsection (3) extends the original Section 148(3) to include any case where payment or acceptance is definitely refused and the refusal is not on the ground that there has been no proper presentment. The purpose of presentment is to determine whether or not the maker, accepter or drawee will pay or accept; and when that question is clearly determined the holder is not required to go through a useless ceremony. The provision applies to a definite refusal stating no reasons.

Payment was refused in this case for want of funds, not for want of proper endorsement or presentment. For this reason, formal presentment was not necessary. We hold that the conditional tender on April 5 was legally insufficient because on April 6, at 2 p.m., the time of contact by the plaintiff, the bank account had insufficient funds to pay the check. The tendered check was only conditional payment. Once the check was dishonored, the underlying obligation was revived, RCW 62A.3–802(1)(b), and the time for payment had then clearly expired.

It is Transamerica's theory that delivery of the check to a bank officer at approximately 1 p.m. on April 6 at Marysville, some 30 odd miles from Seattle, had the effect of covering the check given to Mr. Rains, although the bank operations officer did not know of this arrangement. No authority is cited to support the proposition that a delivery

to a bank officer under these circumstances is the equivalent of a deposit. Normally, a deposit takes place at the time when funds are given to the bank or its agent *on the bank's premises* and during banking hours. 9 C.J.S.2d *Banks and Banking* § 269, at 549 (1938).

When the funds are given to an officer off the premises of the bank, the general rule is that the bank agent or officer receiving the funds remains the agent of the depositor until the funds are actually deposited in the bank. In *Moses Lake State Bank v. Bell,* 128 Wash. 523, 223 P. 587 (1924), at pages 527–28, the court said:

> It seems to be well settled banking law that, in order to charge a bank with liability as for a general deposit, the deposit must have been actually made at the banking house of the bank sought to be so charged; and that when a would–be depositor of a bank places his funds, whether in the form of cash, checks or drafts, in the hands of another at some place away from the bank, even though such other person be an officer of the bank, there is not thereby consummated a deposit chargeable as such against the bank, however much the would–be depositor and such other person may have intended such act as consummating a deposit. Such act goes no farther in its legal effect than to make the person so receiving such funds an agent of the would–be depositor to cause such funds to be actually deposited in the bank at its usual place of doing business.

*Accord, State v. American State Bank,* 112 Neb. 272, 199 N.W. 501 (1924), where at page 275, the court said:

> Banks do not contemplate the receiving of deposits outside their places of business and do not become liable as bankers before the deposits are delivered.

An exception to this rule of nonliability of the bank does exist, particularly in a controversy between the depositor and the bank, if the activity of the officer has been previously authorized by the bank as in *Nordin v. Eagle Rock State Bank,* 139 Cal. App. 584, 34 P.2d 490 (1934). No such showing has been made here. In addition, it seems to us that the holder of the check has a stronger claim to having his rights fixed by the general rule than does the maker

when involved in a dispute concerning the unrecorded arrangements between that maker and the bank.

Accordingly, it is our view that while Mr. Norstrom was returning to the bank with the certified check, he was a bailee of the check as the agent of Transamerica. No deposit occurred until he had reached the bank and communicated with his operations officer. Up to that point, no arrangements had been made to cover the outstanding check and the bank properly dishonored the check by marking it "N.S.F."

Two cases upon which Transamerica relies are *Hamilton v. Baker,* 147 Tex. 240, 214 S.W.2d 460 (1948) and *Cantlay & Tanzola, Inc. v. Ingels,* 31 Cal. App. 2d 553, 88 P.2d 141 (1939). Both of these cases relieve the drawer of the check from forfeiture or penalty where positive arrangements had been made with the bank to cover outstanding checks, but through failure of the bank's internal communications, the checks were not paid. There being no such arrangement here, these cases are not in point.

The third issue before us is whether the trial court erred in denying the motion to intervene under CR 24(a)(2). Arguably, the proper motion would have been to substitute Transamerica for the Lewises under CR 25(c), but in either case the result is the same.

The motion was made on April 26, 1976. By the judgment of December 5, 1975, the contract had already been forfeited subject only to the right of reinstatement on conditions granted. As noted previously, this was a final judgment.

*Martin v. Pickering,* 85 Wn.2d 241, 533 P.2d 380 (1975), requires that the motion to intervene be timely made and that if permitted after judgment, it should be only on a strong showing after taking into consideration all circumstances, including prior notice of the lawsuit and circumstances contributing to the delay in making the motion. To this we would add a showing of substantial prejudice if permission to intervene is denied.

Transamerica took its assignment and deed on December 3, 1974, with knowledge of the pending lawsuit. This was a full year before the December 5, 1975, judgment. It could have moved to enter the case at any time to protect its position. It chose not to do so but rather pressed the limits of the grace period to the extreme and only thereafter sought to enter the case. Its application was not timely.

In any event, we fail to see how prejudice arose from the denial of the motion. Transamerica has in fact been permitted to appeal and has been able to present its position on the two critical issues concerning the time limit and the circumstances surrounding the issuance of the check and its dishonor after the time limit had clearly expired. Refusal to permit formal intervention was at most, harmless error.

The judgment is affirmed.

PEARSON, C.J., and REED, J., concur.