[No. 14425-9-III. Division Three. August 13, 1996.]

FRANCES M. FORD, *Appellant*, v. WAYNE E. HAGEL,
ET AL., *Respondents*.

*John R. Zeimantz* and *Feltman, Gebhardt, Eymann & Jones, P.S.*, for appellant (counsel for appeal only).

*C. Raymond Eberle*, for respondents.

SCHULTHEIS, J. — Real estate purchaser Frances M. Ford filed a complaint to set aside a contract forfeiture obtained against her by the sellers, Wayne and Nadine Hagel. On cross motions for summary judgment, the court granted the Hagels' motion and dismissed the complaint. Ms. Ford appeals. Because there are issues of material fact concerning the Hagels' right to declare forfeiture when they purported to do so, the court should not have granted summary judgment in their favor. We reverse and remand.

In May 1989 Ms. Ford entered into a real estate contract with the Hagels for the purchase of approximately 320 acres of timber and grazing land. The purchase price was $46,400, with $10,000 down and payments of $375 per month. The contract contained a "time is of the essence" clause and provided "[s]hould purchaser fail to make any payment . . . vendors at their option may declare a forfeiture by written Notice of Intent to Forfeit to the purchaser, and at the expiration of 91 days after the recording of the

Notice of Intent to Forfeit . . . the purchaser's rights under this contract shall be cancelled . . . ."

In May 1993 the Hagels sent Ms. Ford a notice of intent to forfeit for failure to make the March, April and May payments. Ms. Ford timely cured the default and brought the contract current through August 1993. She then failed to make the September, October and November payments.

On November 12, 1993, the Hagels sent her a second notice of intent to forfeit and recorded the notice with the Lincoln County Auditor. The Hagels rerecorded the notice on November 18 to correct the legal description (the range number had been omitted in the second line of the parcel 1 legal description and had been included in the last line instead), but did not send the rerecorded notice to Ms. Ford.

The notice of intent to forfeit provided "[f]ailure to cure all of the defaults listed . . . on or before February 10, 1994, will result in the forfeiture of the Contract." The notice required Ms. Ford to pay $1,125 in delinquent payments and $583.02 in costs, for a total amount of $1,708.02, plus any payments falling due after the date of the notice. The notice provided "[m]onies required to cure the default may be tendered to [the Hagels' attorney at his address]." The contract required cash payment of the costs of preparing the notice of intent to forfeit, in an amount not to exceed $250, but did not require cash payment (or payment by certified check) of any other amounts required to reinstate the contract.

On February 10, 1994, Ms. Ford tendered a cashier's check for $1,800 and a personal check dated January 10, 1994 for $1,033.32 to escrow clerk Lynn A. McEachran at Adept Escrow Services, which held the contract. Ms. McEachran contacted the Hagels' attorney, who advised her to reject the tender. On February 11 Ms. McEachran returned both checks to Ms. Ford by mail, with a letter explaining: "We are returning the above checks to you as there is not sufficient funds in your bank to cover the personal check."

On February 17 an acquaintance of Ms. Ford delivered to Adept Escrow Services a cashier's check for $1,800 and Ms. Ford's personal check for $1,033.32. On instructions from the Hagels' attorney, the tender was rejected. The personal check was then converted to a cashier's check later that day. Since the total of the two cashier's checks was sufficient to cure the default, escrow agent Mary Freitag again contacted the attorney for instructions. He instructed her not to accept payment because the time for cure had lapsed. Consequently, Ms. Freitag returned the two checks to Ms. Ford by mail.

On February 17, 1994, the Hagels recorded a declaration of forfeiture with the Lincoln County Auditor. They sent a copy of the declaration to Ms. Ford by certified mail on February 21.

On April 13 Ms. Ford filed a complaint to set aside the declaration of forfeiture pursuant to RCW 61.30.140. Under the statute, Ms. Ford would have the right to set aside the forfeiture if the Hagels either (1) were not entitled to declare forfeiture at the time they purported to do so or (2) did not materially comply with the statutory forfeiture requirements. RCW 61.30.140(4). Both parties moved for summary judgment. The court granted the Hagels' motion and awarded them $600 attorney fees pursuant to RCW 61.30.140(5). Ms. Ford appeals.

 When reviewing an order of summary judgment, this court engages in the same inquiry as the trial court. RAP 9.12; *Hiatt v. Walker Chevrolet Co.*, 120 Wn.2d 57, 65, 837 P.2d 618 (1992); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). The moving party has the burden of showing there is no issue of material fact, which is one upon which the outcome of the litigation depends, in whole or in part. *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642, 618 P.2d 96 (1980). The court must resolve all reasonable inferences from the evidence against the moving party

and should grant the motion only if reasonable people could reach but one conclusion. *Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wn.2d 99, 108, 751 P.2d 282 (1988).

Summary judgment was not appropriate in this case because the Hagels did not meet their burden of demonstrating no issue of material fact exists and that they are entitled to judgment as a matter of law. If Ms. Ford's personal check was good when tendered with the cashier's check on February 10, the Hagels would not have been entitled to declare forfeiture when they purported to do so on February 17 and Ms. Ford would have the right to have the forfeiture set aside.[1] RCW 61.30.140(4)(b). To be entitled to judgment as a matter of law, the Hagels needed to establish the check was not good. They could do that by showing the check was presented and dishonored or that presentment was excused because payment was definitely refused by the bank for want of funds. *See Rains v. Lewis*, 20 Wn. App. 117, 122-23, 579 P.2d 980 (1978); former RCW 62A.3-501 through -506, -511.[2]

In support of their motion for summary judgment, the Hagels presented the affidavits of Ms. McEachran and Mrs. Hagel to show that Ms. Ford's check would not have

---

[1]Because the notice of intent to forfeit filed on November 18 expressly "supersedes any Notice of Intent to Forfeit which was previously given under this Contract and which deals with the same defaults," it arguably changes the deadline as well. Ms. Ford did not raise this issue below, however, and in fact conceded this was not an issue in her summary judgment memorandum. Nor did she raise the technical error caused by the incorrect cure date contained in the notices (February 10 instead of February 11, which is the correct date under the contract provision allowing 91 days for cure after the recording of the notice of intent to forfeit). An appellate court engages in the same inquiry as the trial court; therefore, it considers only the evidence and issues called to the trial court's attention. *Washington Fed'n of State Employees v. Office of Fin. Management*, 121 Wn.2d 152, 157, 849 P.2d 1201 (1993); RAP 9.12. Failure to raise these issues below precludes consideration of them at this point.

[2]Former RCW 62A.3-501 through -506, and -511, specified when formal presentment of a check was required and when it was excused. RCW 62A.3-501 through -505 were rewritten by LAWS OF 1993, ch. 229, §§ 61-65, effective July 1, 1994. RCW 62A.3-506 through -511 were repealed by LAWS OF 1993, ch. 229, § 76, effective July 1, 1994. The events at issue happened before these changes took effect, so this case is governed by the same statutes that applied in *Rains*.

been honored had it been presented to the bank.[3] Ms. McEachran's affidavit states, in relevant part:

> On February 10, 1994, I received a cashier's check in the amount of $1,800.00 from FRANCES FORD and a personal check, check #965, in the amount of $1,033.32.

> It was determined that the personal check would not be honored due to insufficient funds.

Mrs. Hagel's affidavit states, in relevant part:

> On or about February 18, 1994, I was advised that the escrow company had received two cashier's checks in an attempt to cure the default which included payments for December, January and February as well. Because the time had expired for reinstating the contract, my husband and I refused to accept the payment and instructed our attorney not to accept the payments.

> The plaintiff, FORD, claimed that an attempt was made to tender the payment approximately a week earlier. At that time the plaintiff had tendered a personal check which was supposed to be covered by funds in a bank account.

> Under the terms of the Notice of Intent to Forfeit the last day for curing the default was February 10, 1994. The plaintiff claimed that the personal check would have cleared as of that date. However, I contacted the plaintiff's bank personally and determined that the check would not clear.

Aside from the hearsay problems raised by these affidavits, they do not establish when or how it was deter-

---

[3] In the memorandum supporting her cross motion for summary judgment, Ms. Ford argues her tender of the cashier's check and personal check on February 10 would have cured the default had the checks been presented for payment instead of being returned based on a telephone call. In support of her position, she attached a "declaration" from Renee J. Stolt, account representative at Washington Mutual Bank, indicating that Ms. Ford's check would have been covered. The declaration is not a sworn affidavit or statement, and would not itself prevent summary judgment. The Hagels, however, as the moving party bore the burden of establishing the absence of any genuine issue of fact that Ms. Ford's check might have been good on February 10. Because they did not do so, the burden of production did not shift to Ms. Ford and the inadequacy of Ms. Stolt's "declaration" is immaterial at this stage. Ms. Ford will, of course, bear the burden of proof at trial.

mined that the check would not clear. A telephoned inquiry as to whether a check would be paid if presented does not comply with the authorized modes of presentment, is not itself a presentment and demand for payment, and does not constitute refusal of payment and dishonor. *Kirby v. Bergfield*, 186 Neb. 242, 182 N.W.2d 205, 208 (1970);[4] former RCW 62A.3-504(2) (presentment may be made by mail, through a clearing house, or at the place of acceptance or payment specified in the instrument, or if none, at the place of business or residence of the party to accept or pay).

*Rains* excuses formal presentment only when payment or acceptance has been definitely refused. In *Rains*, the payee took the check to the bank, verified that payment would definitely be refused, and had the check stamped "N.S.F." The "N.S.F." stamp is authorized evidence of presentment and dishonor. Before repeal, RCW 62A.3-510 read, in pertinent part:

> **Evidence of dishonor and notice of dishonor.** The following are admissible as evidence and create a presumption of dishonor . . .
>
> . . . .
>
> (b) the purported stamp or writing of the drawee, payor bank or presenting bank on the instrument or accompanying it stating that acceptance or payment has been refused for reasons consistent with dishonor;

There is no evidence that the escrow agent or the Ha-

---

[4]We are aware that *Prevo v. McGinnis*, 142 Ariz. 298, 689 P.2d 557 (Ariz. Ct. App. 1984) declined to follow *Kirby* and held presentment was not necessary after a telephone call to the buyer's bank confirmed the buyer's check was no good. *Prevo* differs from this case in several respects, however, and we do not find it persuasive. The creditors were the plaintiffs in *Prevo*; they alleged nonpayment in their complaint and their motion for summary judgment, and the debtor/defendant made no claim that the check would have been good. The *Prevo* debtor tendered his personal check as part payment and a cashier's check for the balance, despite the fact a cashier's check was required for the full amount. (Here, the cashier's check more than covered the amount to be paid in cash and there was no requirement that the balance be paid in any particular fashion.) The court agreed the agent's affidavit could not be used to prove the personal check would not clear if presented, but apparently accepted it as such proof. Finally, the court's reasons for rejecting *Kirby* are not clear.

gels did anything more than make a telephone call to an unidentified person to see if the check would be paid. The Hagels' affidavits do not establish a definite refusal, nor do they establish any other excuse for nonpresentment. Whether there were funds on deposit to cover Ms. Ford's check, or whether the bank upon presentment would have covered it until such funds were on deposit, or whether presentment was excused are material questions of fact precluding summary judgment.

Ms. Ford is clearly not entitled to summary judgment, either, since she did not establish the check would have cleared. And although we decide this appeal in her favor, we deny her request for attorney fees because an award at this time would be premature. Ms. Ford will be entitled to her attorney fees under the parties' contract and RCW 61.30.140(5) only if she prevails on remand and establishes a right to set aside the forfeiture.

We reverse and remand for further proceedings consistent with this opinion.

SWEENEY, C.J., and THOMPSON, J., concur.

After modification, further reconsideration denied September 24, 1996.