[No. 29906. Department One. May 29, 1946.]

THE STATE OF WASHINGTON, *on the Relation of C. O. Malmo et al., Plaintiff*, v. OTTO A. CASE, *as Commissioner of Public Lands, Respondent.*[1]

*Riddell, Riddell & Hemphill,* for relators.

*The Attorney General* and *Stanbery Foster, Assistant,* for respondent.

STEINERT, J.—This is an original application made in this court for the issuance of a writ of mandamus to compel the commissioner of public lands to mark for cutting certain

[1]Reported in 169 P. (2d) 623.

timber located on state property and meanwhile permit relators to log and remove such timber.

In July, 1942, Mr. F. H. Brundage, western log and lumber administrator of the war production board, sent a letter to Honorable Arthur B. Langlie, then governor of the state of Washington, notifying the latter of the critical situation with respect to logs needed for the manufacture of aircraft material for use in World War II, and requesting that, in order to relieve the emergency, all necessary steps be taken at once to make immediately available for cutting the spruce timber on any or all state school lands in the Olympic peninsula or elsewhere.

Pursuant to, and in compliance with, that request, the state of Washington, through Mr. Jack Taylor, then commissioner of public lands, and Olympic Logging Company, a copartnership composed of C. O. Malmo and Abe Sherman, the relators herein, entered into a series of contracts, four in number, wherein the state agreed to sell, and the relators agreed to buy, all of the merchantable content of all standing spruce and fir trees of specified sizes and grades, together with certain other described timber, located on lands owned by the state. The first of these contracts was entered into on July 13, 1943, and was to be completed within one hundred and eight days thereafter; the second contract was made August 24, 1943, and was to be completed within ninety-six days after that date; the third and fourth contracts were dated October 27, 1943, and were to be completed within the next ninety days. The latest date fixed in any of the contracts for completion of the work thereunder was January 27, 1944.

Each of the contracts contained a provision to the effect that all timber, whether standing or fallen, not removed from the lands by the relators prior to certain dates, the latest of which was January 27, 1944, should revert to and become the property of the state as fully and to all intents and purposes as if the respective agreements had not been made, and in such event the rights of the purchasers and those claiming under them to cut or remove timber from the lands should utterly cease on the expiration dates

named in the contracts, with the proviso that, if the purchasers were acting in good faith, the commissioner of public lands "may extend the time of removal in accordance with all statutes governing," in which latter event all timber, either standing or fallen, not removed at the expiration of such extension should likewise revert to and become the property of the state as fully and to all intents and purposes as if the extension had not been made. The contracts further provided that the commissioner of public lands should be the sole judge as to whether the timber covered by the respective agreements had been logged properly.

Relators entered upon the performance of the contracts but failed to complete them within the periods allowed therefor. In the meantime, however, relators had made a series of applications to the commissioner of public lands for extensions of time for removal of the timber and were granted such extensions to October 19, 1945, at which time Mr. Otto A. Case, respondent herein, had succeeded Mr. Jack Taylor as commissioner of public lands.

Sometime prior to the last-mentioned date, relators, realizing that they would be unable to make complete removal of the timber by October 20, 1945, made request for a further extension of time, beyond that date, but the commissioner, respondent Case, refused to grant that request.

Relators thereupon sought a hearing upon their request for such extension, before the board of state land commissioners, which, since March 24, 1941, has consisted of the commissioner of public lands, the secretary of state, the state treasurer, the attorney general, and the superintendent of public instruction. (Chapter 217, Laws of 1941, p. 679, Rem. Supp. 1941, § 7797-10 [P.P.C. § 940-63]). A hearing was accorded and held by the board on October 19, 1945. The board, by a vote of three to two, approved relators' application for extension of time to October 19, *1946*, for the removal of the timber.

Despite that action by the board, respondent Case, being of the opinion that the board of state land commissioners had no jurisdiction or authority to hear or grant relators'

application for extension and that the commissioner himself had sole authority in such matters, refused to grant the extension, on the ground, as stated in his letter to the relators under date of October 19, 1945, that their logging operations had been highly unsatisfactory and not in accordance with the spirit of the contracts. By a further letter, sent to the relators the next day, October 20th, the commissioner asserted his sole authority in the matter of granting extensions and notified relators that no further operations of any kind would be permitted on the Olympic peninsula under any of the contracts, and that any such attempt on their part would be met by prosecution for trespass.

On February 28, 1946, which was one hundred thirty-one days after the commissioner's announcement of his decision, relators initiated the present proceeding in this court by application for a writ of mandamus to compel the commissioner of public lands to mark for cutting all timber upon the lands described in the contracts and, in connection therewith, permit relators to log such timber under the terms of those agreements. The application for the writ was supported by a lengthy affidavit reciting the facts as the relators conceived them to be.

The respondent commissioner, having been ordered by this court to show cause why relators' application should not be granted, demurred to the application and supporting affidavit and at the same time made a written return in which he admitted relators' allegations as to the legal status of the respective parties to the action and further admitted the state's ownership of the lands here involved, but denied all the other allegations of relators' application and affidavit. For a further answer and as an affirmative defense, respondent set forth in his return the facts as he claimed them to be.

Relators filed a reply affidavit denying in part, and purporting in part further to explain the remainder of, the allegations contained in respondent's affirmative defense. Additional affidavits were later filed by both parties, each

partly alleging facts contradictory of the facts alleged by the other party.

Upon this state of the record, the cause has been submitted to us for decision.

The briefs in this case present a number of questions which are highly important not only to the parties involved in this particular proceeding, but also to others who in the future may be confronted with a similar situation. However, we shall discuss and dispose of but one question, leaving all of the others for future consideration as they may arise.

The one question to which we shall give our attention is whether, under the circumstances presented by the record, the relators' proper remedy is by application to this court for a writ of mandamus, or whether the application should in the first instance have been addressed to the superior court.

■ Although by Art. IV, § 4, of the state constitution and by Rem. Rev. Stat., § 1 [P.P.C. § 110-31], the supreme court of this state has original jurisdiction in mandamus to state officers, such jurisdiction is not exclusive. The superior court, being of general jurisdiction and having been established as the trial court of the state, was by Art. IV, § 6, and by Rem. Rev. Stat., § 15 [P.P.C. § 109-13], clothed with original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court.

■ In *State ex rel. Ottesen v. Clausen*, 124 Wash. 389, 214 Pac. 635, this court suggested and adopted as the better practice the rule that cases of this general nature should be relegated to the superior court for trial in those instances where the particular case does not involve the validity of a statute, or in its character does not embrace any great public right, or does not require the assumption of original jurisdiction by the supreme court in order to prevent a failure of justice, and where questions of fact are involved and the procedure has for its purpose the enforcement of a private right. As authority for such rule, this court quoted

approvingly from 18 R. C. L. 101, Mandamus, § 15 (restated in 34 Am. Jur. 824, Mandamus, § 26), as follows:

" 'Though the state courts of last resort are given original jurisdiction to issue writs of mandamus, and under such a grant have in many instances exercised such jurisdiction frequently without their jurisdiction being questioned, it does not follow that such courts whose principal function is to exercise appellate or supervisory jurisdiction will assume original jurisdiction in all cases in which their aid may be sought and which otherwise may be a proper case for the use of the remedy. And in this connection the established rule seems to be that as original jurisdiction is conferred in order that the court of highest authority in the state should have the power to protect the rights, interests, and franchises of the state, and the rights and interests of the whole people, to enforce the performance of high official duties affecting the public at large, and, in emergency (of which the court itself is to determine), to assume jurisdiction of cases affecting local public interests, or private rights, where there is no other adequate remedy, and the exercise of such jurisdiction is necessary to prevent a failure of justice, the court is vested with a sound legal discretion to determine for itself, as the question may arise, whether or not the case presented is of such a character as to call for the exercise of its original jurisdiction. And some courts say that original jurisdiction should not be assumed except in cases affecting the sovereignty of the state, its franchises, or prerogatives, or the liberties of its people, or in exceptional cases where a failure to take jurisdiction would amount to a denial of justice, and only when the interest of the state at large is directly involved, and where such interest is the principal, and not a collateral question.' "

In *State ex rel. Goodwin v. Savidge,* 133 Wash. 532, 234 Pac. 1, the court, after citing the *Ottesen* case, *supra,* and quoting the same language from 18 R. C. L. 101, held that, even where no question of fact is involved, the rule should nevertheless be followed in cases where the validity or constitutionality of a statute is not involved, and the interest of the state at large is not a principal question in the case, and the superior court can give the complete relief sought.

The rule has consistently been applied, or else specifically recognized, in subsequent cases: *State ex rel. Van Brocklyn*

*v. Savidge,* 140 Wash. 361, 249 Pac. 996; *State ex rel. Dunbar v. State Board of Equalization,* 140 Wash. 433, 249 Pac. 996; *State ex rel. Taylor v. Lawler,* 2 Wn. (2d) 488, 98 P. (2d) 658; *State ex rel. Pacific Bridge Co. v. Washington Toll Bridge Authority,* 8 Wn. (2d) 337, 112 P. (2d) 135.

The case at bar falls clearly within the rule. The present litigation does not involve the validity or constitutionality of a statute; the right sought to be enforced by the relators is an alleged private right under a contract; assumption of jurisdiction by this court is not necessary or indispensable to prevent a failure of justice; and, most important, questions of fact are here involved which only the superior court is equipped to determine, and for which it can supply an adequate remedy. Relief should, therefore, have first been sought by the relators in the superior court in some manner consistent with the procedure prescribed, permitted, or applicable in such cases.

In this connection, it is but fair to say that relators in all probability adopted their present course in the belief that no issue of fact was, or would be, presented, and that the only questions to be determined were questions of law, namely, (1) whether relators' proper remedy was by a proceeding in mandamus such as they have here brought, or by way of an appeal from the decision of the commissioner; and (2) whether, under the statute, the commissioner was bound by the action taken by the board of state land commissioners in granting relators a further extension of time to cut and remove the timber.

However, as already stated, issues of fact have been injected into the case by the various pleadings and affidavits, and hence the rule announced above is applicable and calls for application.

For the reason hereinabove stated, and without expressing any opinion on the other questions here raised, the application for a writ of mandamus from this court is denied.

BEALS, C. J., ROBINSON, JEFFERS, and CONNELLY, JJ., concur.