[No. 33025. Department One. August 6, 1954.]

THE STATE OF WASHINGTON, *on the Relation of Jack S. Kurtz et al., Plaintiff*, v. WILL D. PRATT, *as Auditor of Whatcom County, et al., Respondents*.[1]

*Jack S. Kurtz* and *Sather, Livesey & Kingsbury*, for relators.

[1]Reported in 273 P. (2d) 516.

*Tom A. Durham,* for respondent Pratt.

*Marshall Forrest, T. B. Asmundson,* and *R. Frank Atwood,* pro se.

PER CURIAM.—In this proceeding, originating in this court (argued here on July 30, 1954), the relators seek an order restraining the Whatcom county auditor from placing the names of Marshall Forrest, T. B. Asmundson, and R. Frank Atwood on the ballot as justice of the peace candidates in the city of Bellingham at the forthcoming election. Relators also seek an order directing the auditor to prepare the ballots so that two positions for justice of the peace will appear thereon rather than only the one position now contemplated by the auditor.

There is no dispute as to the facts in this matter. Relators are candidates for the office of justice of the peace in the city of Bellingham. Each has filed appropriate documents and has paid a filing fee of fifty-four dollars to the county auditor. The above-named individual respondents, other than the auditor, also claim to be candidates for the office of justice of the peace, entitled to have their names on the ballot. As a result of a mandamus action by the latter in the superior court for Whatcom county, the auditor was ordered to accept the filing fees of twelve dollars and the declarations of candidacy proffered by them. The auditor has done so. Apparently, the superior court did not order the names of respondent candidates printed on the ballot, and did not pass upon any constitutional questions. There has been no appeal from the order of the superior court in the mandamus action there.

Section one, chapter 156, Laws of 1951 (RCW 3.12.021), provides, in effect, that Bellingham, having a population of between twenty thousand and seventy-five thousand, shall have two justices of the peace, unless such number is reduced by action of the county commissioners. The Whatcom county commissioners have taken action, as provided in the above-mentioned section, to reduce the number of the justices of peace and to provide for only one such position in

the city of Bellingham. Section one, chapter 156, Laws of 1951, p. 430, reads:

"SECTION 1. The number of justices of the peace to be elected in cities having a population of 5,000 or more, according to the last census, shall be as follows: 5,000 to 20,-000, one; 20,000 to 75,000, two; 75,000 to 125,000, three; 125,-000 to 175,000, four; and one additional for each 150,000 or major fraction thereof above 175,000. The board of county commissioners may reduce the number of justices of the peace by notifying the secretary of state ninety days prior to the general election at which such reduction is sought. The secretary of state shall order the ballots to be printed to comply with the action of the board of county commissioners."

Relators contend: (1) That the provision contained in § 1, chapter 156, Laws of 1951, permitting county commissioners to reduce the number of justices of the peace, specified therein by the legislature, is unconstitutional in that it is an improper attempt to delegate legislative power to the commissioners, considering amendment twenty-eight to the state constitution, which, in effect, provides that the number of justices of the peace shall be determined by the legislature. See *Manus v. Snohomish County Justice Court Dist. Committee*, 44 Wn. (2d) 893, 271 P. (2d) 707. (2) That the unconstitutional portion of § 1, chapter 156, and other portions of such chapter declared to be unconstitutional in the *Manus* case, *supra*, are severable from the remaining portions of chapter 156 (which relate to justices of the peace *in cities*). (3) That such remaining portions stand by themselves and are valid and constitutional, among other things, (a) establishing two justices of the peace for Bellingham (section one), (b) carrying salaries of $5,400 per year (section four). (4) That consequently, the filing fees of twelve dollars proffered by each of the three above-mentioned individual respondents, are inappropriate and do not entitle them to be listed on the ballot as candidates. Lastly, it is contended by relators that it is proper for the supreme court to entertain their petition and to grant the requested relief in a proceeding originating in this court.

In connection with this latter contention, relators cite and rely upon *State ex rel. Reynolds v. Howell*, 70 Wash. 467, 126 Pac. 954, but apparently rely principally upon Rem. Rev. Stat., § 5202 [*cf.* RCW 29.04.030], reading, in part, as follows:

"Whenever it shall appear by affidavit to any judge of the supreme court or superior court of the county that any error or omission has occurred or is about to occur in the printing in the name of any candidate on official ballots, or that any error has been or is about to be committed in printing the ballots, or that the name of any person has been or is about to be wrongfully placed upon such ballots, or that any wrongful act has been performed or is about to be performed by any judge or clerk of the primary election, the county auditor, canvassing board or member thereof, or by any person charged with a duty under this act, or that any neglect of duty by any of the persons aforesaid has occurred, or is about to occur, such judge shall, by order, require the officer or person or persons charged with the error, wrongful act or neglect, to forthwith correct the error, desist from the wrongful act, or perform the duty, and to do as the court shall order, or to show cause forthwith why such error should not be corrected, wrongful act desisted from, or such duty or order not performed. Failing to obey the order of such court shall be contempt. . . ."

Respondent candidates agree with relators that the portion of § 1, chapter 156, attempting to authorize county commissioners to reduce the number of justices of the peace is unconstitutional, but agreement ends at this point. Respondent candidates contend that the provisions of § 1 of chapter 156 are not severable; that the unconstitutional portion carries the remainder of the section with it and invalidates the whole. They further contend that § 1 is not severable from §§ 2 through 7, inclusive; and that §§ 1 through 7, inclusive, are not severable from those sections of chapter 156 invalidated on constitutional grounds in the *Manus* case. In other words, that chapter 156 must stand or fall as a whole; consequently, that the entire chapter is invalid. Lastly, the county auditor contends that relators are not entitled to the requested relief in an original proceeding in the supreme court because of the limited constitutional

jurisdiction of this court with respect to the issuance of extraordinary writs, including prohibition, which the auditor contends is the relief actually sought by relators. The auditor makes a very forceful argument that his actions in preparing the ballot may in no event be considered judicial or quasi-judicial; that original prohibition in the supreme court is authorized by the constitution and the case law of this state only in relation to judicial or quasi-judicial acts. He cites and relies upon *State ex rel. White v. Board of State Land Com'rs*, 23 Wash. 700, 63 Pac. 532; and *Winsor v. Bridges*, 24 Wash. 540, 64 Pac. 780. In fine, the auditor states that relators are simply in the wrong court; that they should have started the instant proceeding in the superior court for Whatcom county.

It is necessary that ballots be prepared and available for absentee voters within the next few days. Rem. Supp. 1949, § 5185 [*cf.* RCW 29.27.030]. The primary election is on September 14, 1954. The questions presented to us for decision in the case at bar are emergent in an extreme degree. They affect county auditors throughout the state. Time is of the essence. Without some final authoritative ruling on the questions, there would be much confusion among county auditors. Their actions in connection with the forthcoming election of justices of the peace could hardly be expected to be uniform, as of course they should be.

We are in substantial agreement with the contentions of the relators. We hold that the portion of § 1, chapter 156, authorizing the county commissioners to reduce the number of justices of the peace (such number being specifically set out by the legislature in such section), is invalid on constitutional grounds, but is severable from the remainder of § 1. This latter portion of § 1 is valid and, among other things, establishes two justices of the peace for cities having a population of between 20,000 and 75,000. The other portions of chapter 156, relative to justices of the peace *in cities*—that is, §§ 2 through 7, inclusive,—are severable from the unconstitutional portion of § 1, heretofore mentioned. The sections of chapter 156 relative to justices

of the peace *in rural areas,* invalidated on constitutional grounds in the *Manus* case, are severable from the valid portion of § 1, and from §§ 2 through 7, inclusive, of chapter 156.

In *Supervisors v. Stanley,* 105 U. S. 305, 26 L. Ed. 1044, the United States supreme court said:

"The general proposition must be conceded, that in a statute which contains invalid or unconstitutional provisions, that which is unaffected by these provisions, or which can stand without them, must remain. If the valid and invalid are capable of separation, only the latter are to be disregarded."

In *State ex rel. Fair v. Hamilton,* 92 Wash. 347, 159 Pac. 379, we said:

"Conceding that the legislature has exceeded its power in this respect, the fact would not render the entire act void. This part of the act is distinct and separable from the other provisions, and it cannot be supposed that the legislature would not have passed the one without the other. In such a case the courts are not authorized to declare the whole act void, but must give effect to that part of the act which is within the constitution. *Nathan v. Spokane County,* 35 Wash. 26, 76 Pac. 521, 102 Am. St. 885, 65 L.R.A. 336; *State ex rel. Matson v. Superior Court,* 42 Wash. 491, 85 Pac. 264; *State ex rel. Board of Tax Commissioners v. Cameron,* 90 Wash. 407, 156 Pac. 537."

We need not pass upon the question of whether the issuance of an original extraordinary writ is authorized and proper in this case. The legislature is unquestionably authorized by the constitution to provide for the proper conduct of elections. Rem. Rev. Stat., § 5202 [*cf.* RCW 29.04-.030], is therefore a proper exercise of legislative power. It creates a special procedure for the correction of errors and the prevention of wrongful acts in connection with elections. The procedure involved, and the court orders contemplated by Rem. Rev. Stat., § 5202, need not necessarily be classified as involving the issuance of an original extraordinary writ by this court. In *State ex rel. Pemberton v. Superior Court,* 196 Wash. 468, 471, 83 P. (2d) 345, we said:

"It was contended, in *State ex rel. McAvoy v. Gilliam,*

60 Wash. 420, 111 Pac. 401, where a contest was attempted upon an affidavit similar to that in the case at bar, and where, as here, the contestee only was made a party defendant, that the court was powerless to proceed because the statute fixed no procedure. The court said, in part:

" 'It is true, no further specific procedure is pointed out by the statute, but § 69, Rem. & Bal. Code, which is a general provision relating to courts, provides:

" ' "When jurisdiction is, by the constitution of this state, or by statute, conferred on a court or judicial officer all the means to carry it into effect are also given and in the exercise of the jurisdiction, if the course of proceeding be not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted, which may appear most conformable to the spirit of this code."

" 'This section seems to supply any deficiency of procedure which is omitted in the primary law, and we think completely answers the objections named.' "

▇▇ If we should refuse to act in the instant matter, we would be remiss in our duty as members of the court of last resort of this state, in that we would disregard the responsibility relative to the protection and orderly conduct of elections tendered to us by the legislature in its enactment of Rem. Rev. Stat., § 5202.

Based upon the special procedure established by the legislature in the enactment of Rem. Rev. Stat., § 5202, it is our opinion that the relators are entitled to the relief requested by them, namely: (a) That two positions for justice of the peace in the city of Bellingham should be placed upon the ballot by the county auditor; and (b) that the county auditor should list relators as candidates, and refrain from listing respondents, whose filing fees are inadequate.

It is so ordered.