539

GTECH CORPORATION,
*Petitioner,*

*v.*

ROBERTS,
*Respondent.*

(SC S32386)

HILL et al,
*Petitioners,*

*v.*

ROBERTS,
*Respondent.*

(S32384)

(Cases Consolidated for Opinion)

714 P2d 610

Paul R. Romain, Portland, argued the cause for petitioner GTECH Corporation. With him on the petition were Preston, Ellis & Holman, Portland.

Jim Hill, Salem, argued the case and filed the petition *pro se* and for petitioner Joyce Cohen.

John A. Reuling, Assistant Attorney General, Salem, argued the causes for respondent. With him on the answering memoranda were Dave Frohnmayer, Attorney General, and James Mountain, Jr., Solicitor General, Salem.

Before Peterson, Chief Justice, Lent, Linde, Campbell, Carson, and Jones, Justices, and Gillette, Justice pro tempore.

PER CURIAM.

Peterson, C. J., did not participate in the decision of this case.

## PER CURIAM

A ballot title prepared by the Attorney General for a proposed initiative measure is challenged in two petitions, one by the corporation operating the state lottery for the State of Oregon, the other by two legislators who jointly chair the legislature's committee on trade and economic development.

The proposed measure would amend the present constitutional provisions for the state lottery, Article XV, section 4, of the Oregon Constitution, in two major respects. The proposed constitutional amendment would specify a single formula for the conduct of the lottery game and the distribution of prizes, a matter that present Article XV, section 4, leaves to the State Lottery Commission. The present provision dedicating the state's proceeds from the lottery "for the purpose of creating jobs and furthering economic development in Oregon" would be replaced by a formula allocating 38 percent of the proceeds to counties for specified distribution to vocational education, law enforcement, and other uses. The proposed constitutional measure also would increase from 84 percent to 88 percent the proportion of the total lottery proceeds that must be distributed in prizes and to the local government programs specified in the amendment, reducing administrative costs from 16 percent to 12 percent.

The Attorney General prepared a draft ballot title, to which petitioners made different objections under the procedure provided by ORS 250.067. The Attorney General then certified to the Secretary of State a revised ballot title, which reads as follows:

### "AMENDS CONSTITUTION: SHIFTS LOTTERY MONEY TO LOCAL GOVERNMENTS

"*QUESTION*: Shall constitution be changed to remove requirement that lottery fund economic development projects, and money instead go to local governments?

"*EXPLANATION*: Removes requirement that lottery fund economic development. Distributes lottery proceeds:
12% - Administration, advertising (presently 16%).
50% - Prizes (specifies prizes and game procedure).
38% - To counties, based on county lottery sales, for distribution:

    a)   50% to schools for vocational education.

 b) 34% to cities in county for law enforcement.
 c) 3% to cities, county for economic development.
 d) 8% to cities, county for community transportation.
 e) 5% to cities, county for tourism."

Petitioners now bring their objections to the revised ballot title to this court pursuant to ORS 250.085.

■ Under ORS 250.085(4), as amended in 1985, this court's task is to "review the title for substantial compliance with the requirements of ORS 250.035 and 250.039, and [to] certify a title meeting this standard to the Secretary of State."

The requirements of ORS 250.035 and 250.039, in substance, are that the caption of a measure "identifies the subject matter of the measure," that the question "plainly states the purpose of the measure" phrased so that an affirmative answer corresponds to an affirmative vote, that there be a "concise and impartial statement" of the "chief purpose of the measure," that the ballot title should avoid confusion with other ballot titles previously filed for the same election, and that the ballot title meet criteria of readability so far as practicable consistent with impartiality, conciseness, and accuracy.

Petitioner GTECH objects to the revised ballot title because it fails to inform voters that the proposal would constitutionally mandate a single form of lottery game and would eliminate the form of game which GTECH now operates. GTECH submits an alternative ballot title which would emphasize this aspect of the proposal.[1]

---

[1] GTECH's alternative ballot title reads as follows:

"MANDATES LOTTERY GAME PROCEDURE: SHIFTS PROCEEDS TO LOCAL GOVERNMENT

"*QUESTION*: Shall lottery be limited to one constitutionally mandated game structure, with proceeds shifted from economic development to local governments?

"*EXPLANATION*: Mandates only one lottery game structure, eliminating on-line games (Lotto) as revenue source; shifts 38% of lottery revenue from economic development to counties, based on county lottery sales, for distribution as follows:

Petitioners Hill and Cohen object to the caption of the revised title because it only states that lottery money will be shifted to local governments but does not inform voters that the money will be taken away from economic development. They propose that the caption be changed to read: "AMENDS CONSTITUTION: SHIFTS LOTTERY MONEY FROM ECONOMIC DEVELOPMENT TO COUNTIES."

Respondent's answering memoranda in this court concede GTECH's claim that the revised ballot title does not adequately describe the mandated change in the lottery format and therefore does not substantially comply with ORS 250.035. In order to rectify this shortcoming and also attempt to accommodate reference to the loss of revenue for economic development, respondent suggests a new alternative ballot title phrased as follows:

"CONSTITUTIONAL AMENDMENT CHANGES
LOTTERY PROFITS DEDICATION, MANDATES
SINGLE GAME PROCEDURE

*"Question:* Shall lottery be limited to one constitutionally mandated game structure, profits shifted from economic development to stated local government uses?

*"Explanation:* Constitutional amendment ends economic development dedication of lottery profits. Proceeds paid as follows:

50% as specified prizes in mandated game procedure (instant winners, 20 $100 winners compete for additional prizes); bars other lottery games;

12%, administration and advertising, reduced from 16%;

38% to counties based on county lottery sales, distributed

    (a)   50%, schools for vocational education;

---

    a)   50% to schools for vocational education;
    b)   34% to cities for law enforcement;
    c)   16% to cities and counties for economic development (3%), community transportation (8%) and tourism (5%);

"Keeps prize money at 50% of revenue; lowers administration and advertising revenue to 12% from 16%."

(b)  34%, cities in county for law enforcement;

(c)  16%, cities and county for community transportation (8%), tourism (5%), economic development (3%)."

The ballot title before us for review is the version that the Attorney General certified to respondent. We review it only for substantial compliance with the statutory standards, not to determine whether either party to a challenge or this court can further improve that version. The precertification procedure of ORS 250.067, added in 1985, provides an opportunity to improve the Attorney General's draft that should substantially reduce compelling demands for this court to do so.

■■  In the present case, respondent concedes the inadequacy of the title as written, and we agree with that concession. When a title does not substantially comply with the statutory standards, ORS 250.085(4) directs us to certify a title that does meet the standards. We consider the suggestions of the parties for an alternative, but we are not required to choose formulations from any of them.

■  The primary dispute about the present ballot title is whether the change in the lottery format or in the use of the state's profits is more important and therefore should be featured in the caption, if both cannot be included. A further constraint is that the caption should identify the measure as changing the Constitution rather than only statutory law. *Fithian-Barrett v. Paulus,* 296 Or 819, 822, 680 P2d 381 (1984).

■  We agree that each point is important. The ten-word limit on the caption makes a tight fit, but we think the following will accommodate all three objectives:[2]

CONSTITUTIONALLY PRESCRIBES LOTTERY FORMAT, SHIFTS PROFITS FROM DEVELOPMENT TO COUNTIES.

Because in this caption the word "development" is not preceded by "economic," that meaning should be made

---

[2] It is correct to identify a constitutional amendment by using those two words, as the Attorney General has done, and we depart from the practice here only *in extremis.* Because constitutional amendments should always be identified as such, with the consequence that the substance of the caption for such amendments is reduced from ten to eight words, perhaps ORS 250.035(1)(a) could be amended simply to provide that the caption for constitutional amendments routinely carry these extra two words.

clear in the statement of the question immediately following the caption. We draw the following primarily from respondent's proposed alternative:

QUESTION: Shall constitution be amended, limit lottery to one mandated game format, shift profits from economic development to specified local uses?

We also draw upon respondent's suggestions for the statement of purpose, making a few changes in the interests of readability:

STATEMENT OF PURPOSE: Amends Constitution. Prescribes single lottery format (instant winners, 20 $100 winners competing for additional prizes). Ends dedication of profits to economic development. Distributes proceeds as follows:

50% as prizes.
12% administration and advertising, reduced from 16%.
38% to counties based on county lottery sales, distributed:

    (a)   50% to schools for vocational education;
    (b)   34% to cities for law enforcement;
    (c)   16% for community transportation (8%), tourism (5%), economic development (3%).

Combining these elements, we certify the following ballot title to the Secretary of State:

## CONSTITUTIONALLY PRESCRIBES LOTTERY FORMAT, SHIFTS PROFITS FROM DEVELOPMENT TO COUNTIES.

QUESTION: Shall constitution be amended, limit lottery to one mandated game format, shift profits from economic development to specified local uses?

STATEMENT OF PURPOSE: Amends Constitution. Prescribes single lottery format (instant winners, 20 $100 winners competing for additional prizes). Ends dedication of profits to economic development. Distributes proceeds as follows:

50% as prizes.
12% administration and advertising, reduced from 16%.
38% to counties based on county lottery sales, distributed

    (a)   50% to schools for vocational education;
    (b)   34% to cities for law enforcement;
    (c)   16% for community transportation (8%), tourism (5%), economic development (3%).