[Nos. 55238–0, 55398–0.   En Banc.   January 6, 1989.]

MIKE KREIDLER, ET AL, *Petitioners,* v. KENNETH O. EIKENBERRY, *as Attorney General,* ET AL, *Respondents.*

*In the Matter of* BALLOT TITLE FOR ALTERNATIVE MEASURE NO. 97B.

*Edwards & Barbieri,* by *Malcolm L. Edwards, Catherine Wright Smith,* and *Charles Wiggins,* for petitioners.

*Kenneth O. Eikenberry, Attorney General,* and *Edward B. Mackie, Chief Deputy,* for respondent State.

*Patrick D. Sutherland, Prosecuting Attorney,* and *Jeffrey L. Watson, Chief Civil Deputy,* for respondent Fuller.

*Bricklin & Gendler,* by *David A. Bricklin; Theodore P. Hunter; Peter T. Jenkins; Riddell, Williams, Bullitt & Walkinshaw,* by *Stimson Bullitt* and *Rodney L. Brown, Jr.,* for respondent Citizens' Toxic Cleanup Campaign, et al.

UTTER, J.—This case consolidates two actions: first, a direct appeal from a superior court order denying intervention in an action challenging the ballot title for Alternative Measure 97B; and second, an original action challenging the superior court's jurisdiction to hear ballot title challenges of legislatively enacted measures. Petitioners' primary objective is to obtain review on the merits of the Superior Court's ballot title decision. They contend that this court may reach the merits either by hearing the appeal of the order denying intervention or by hearing the original action challenging the trial court's subject matter jurisdiction. Respondents seek attorney fees for the appeal of the Superior Court's decision. We hold that the Superior Court did not err by denying intervention, that it has jurisdiction, that petitioners are not entitled to review on the merits, and that respondents are not entitled to attorney fees.

In August 1987, Citizens Toxic Cleanup Campaign, Inc. (Citizens) filed Initiative 97 to establish a statewide hazardous waste cleanup program, also known as the state "Superfund." The ballot title for the initiative reads:

Shall a hazardous waste cleanup program, partially funded by a 7/10 of 1% tax on hazardous substances, be enacted?

In October 1987, the Legislature enacted a different hazardous waste cleanup program.[1] In February 1988, the Secretary of State certified the petition signatures for Initiative 97. The Legislature rejected the initiative and directed that its own enactment be presented to the voters as Alternative 97B on the November 1988 ballot.[2]

---

[1] Laws of 1987, 3d Ex. Sess., ch. 2.

[2] Laws of 1988, ch. 112, § 66.

In May 1988, the Attorney General formulated the following ballot title for Alternative Measure 97B:

Shall the legislatively enacted hazardous waste cleanup program, which includes an 8/10 of 1% tax on hazardous substances, be retained?

Citizens appealed this ballot title to the Superior Court for Thurston County, arguing that the proposed title did not identify the essential differences between Initiative 97 and Alternative Measure 97B. Citizens proposed that the title state that the tax under 97B does not apply to exported petroleum products. Citizens served notice of its appeal on the Secretary of State, the Attorney General, and, as the proponents of 97B, the Clerk of the House of Representatives and the Secretary of the Senate. The chairman of the Yes 97B Committee (Committee) was aware of the ballot title challenge, but only the Attorney General appeared to argue in support of his ballot title.

Expressing dissatisfaction with the Attorney General's ballot title, the Superior Court Judge directed the Attorney General and Citizens to try to agree to a title for her approval. On June 13, 1988, she agreed to the following title submitted by the parties:

Shall the legislature's cleanup program, with a 0.8% hazardous substance tax raising less money, with less coverage of petroleum, be retained?

On June 20, 1988, the Committee and several legislators who drafted and voted for 97B moved to intervene and requested that the court reconsider its decision. The Attorney General also moved for reconsideration. On July 19, 1988, the Superior Court denied both the motion to intervene and the Attorney General's motion to reconsider.

The legislators and Committee appealed the denial of their motion to intervene directly to this court. They also filed an original petition in this court against the Attorney General, the Secretary of State, and the Superior Court Judge, challenging the Superior Court's jurisdiction and seeking to overturn the court's approved title. This court consolidated the actions.

This case presents four main issues:

1. Did the Superior Court err by denying the petitioners' motion to intervene?

2. Can this court review the Superior Court's ballot title decision by direct appeal, discretionary review, or by using our inherent powers of review?

3. Can petitioners bring an original jurisdiction action alleging the Superior Court's lack of subject matter jurisdiction?

4. Are respondents entitled to attorney fees in this case?

## I

Appellant legislators and Committee contend that the Superior Court erred by denying their motion to intervene as a matter of right under CR 24(a)(2). That rule reads as follows:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

CR 24(a). The Superior Court held that the appellants' motion was untimely and that the Attorney General adequately represented their interests.

Abuse of discretion is the proper standard of review for a trial court's determination of timeliness. *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). A reviewing court will find abuse "only when no reasonable person would take the position adopted by the trial court." *Board of Regents v. Seattle*, 108 Wn.2d 545, 557, 741 P.2d 11 (1987) (quoting *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 584, 599 P.2d 1289 (1979)).

Timeliness is a critical requirement of CR 24(a). *Martin v. Pickering*, 85 Wn.2d 241, 243, 533 P.2d 380 (1975). Where a person seeks to intervene after judgment,

the court should allow intervention only upon a strong showing after considering all circumstances, including prior notice, prejudice to the other parties, and reasons for and length of the delay. *Martin,* at 243–44; *Rains v. Lewis,* 20 Wn. App. 117, 125, 579 P.2d 980 (1978).

Factors favoring intervention include the legislators' interests as drafters and proponents of Alternative Measure 97B and the Committee's interest as the group formed to campaign for its passage. In addition, by joining their motion to intervene with the Attorney General's motion for reconsideration, appellants reduced prejudice to the existing parties and minimized delay.

A factor supporting the trial court's ruling is the statute governing ballot titles which emphasizes the importance of timeliness. It allows the Attorney General only 7 days to prepare and file a ballot title, challengers only 5 days to appeal the title, and the superior court only 5 days to render a decision. RCW 29.79.040–.060. Timing is clearly important. There is a strong interest in the finality of ballot title decisions.

Petitioners had ample opportunity to intervene before the Superior Court made its decision, but they failed to do so. They had notice, were aware of the suit, and no extraordinary circumstances justify delay. Although they were satisfied with the Attorney General's ballot title, they must have realized that the court might change it. The Attorney General argued vigorously in favor of his ballot title even though, technically, he did not represent the petitioners' interests.

Under the abuse of discretion standard, the Superior Court Judge did not err in denying appellants' motion to intervene. The court's decision was both reasonable and based on tenable grounds. It cannot be said that no reasonable person would have taken the position of the trial court.

## II

Appellants next contend that this court can review the Superior Court's decision on the merits either by direct

review or by discretionary review. We disagree. Even if we assume the appellants were a party to the ballot title decision and had standing to appeal, the statute, nonetheless, precludes both direct and discretionary review. Even if it did not, the circumstances of this case do not warrant reaching the merits by using our inherent power of review.

## DIRECT REVIEW

RCW 29.79.060 states that the superior court's decision on review of the Attorney General's ballot title "shall be final." We have not previously addressed whether the statutory language precludes appellate review. However, a similar issue was decided in *Hatfield v. Greco*, 87 Wn.2d 780, 557 P.2d 340 (1976).

*Hatfield* involved an action under RCW 29.04.030 to challenge the right of the respondent to be a candidate for county commissioner. The statute provides that any challenge to a candidate "shall be heard and finally disposed of by the [superior] court" within 5 days after the challenge was filed. This court interpreted this language to mean that no appeal is available. Such a construction, the court concluded, was consistent with the purpose of the statute to obtain a speedy determination of election disputes and with the rule that procedures prescribed for purely statutory remedies must be strictly construed. 87 Wn.2d at 782.

The same considerations are important in this case. As the trial court stated, the public interest is served by finality in this matter. The election campaign was already under way. Finality aids both the strategists running the campaigns and those preparing the voters' pamphlets. The short time periods allowed by RCW 29.79-.040–.060 emphasize the significance of time. As mentioned earlier, the Attorney General has 7 days to prepare and file the ballot title; challengers have 5 days to appeal; and the superior court has 5 days to review the challenge.

In addition, rules of statutory construction support finding the Superior Court's determination not reviewable. The initiative statute expressly permits review of other types of

superior court decisions by writ of certiorari to this court. RCW 29.79.170, .210.[3] Express mention of one thing implies the exclusion of another; therefore, we can infer an intent to preclude review of ballot title decisions. *See Bradley v. Department of Labor & Indus.,* 52 Wn.2d 780, 784, 329 P.2d 196 (1958); 2A C. Sands, *Statutory Construction* § 47.23 (4th ed. 1973).

Prior case law does not require a contrary result. In *State ex rel. Seymour v. Superior Court,* 168 Wash. 361, 12 P.2d 394 (1932), the court reviewed and upheld the Attorney General's ballot title determination. Although *Seymour* predates RCW 29.79.060, the previous statute also stated that the superior court's decision is final. Laws of 1913, ch. 138, § 3. However, in *Seymour,* the court explicitly stated that it assumed it had jurisdiction and did not decide the jurisdictional issue. 168 Wash. at 363.

Similarly, in *In re Ballot Title for Initiative 333,* 88 Wn.2d 192, 558 P.2d 248, 559 P.2d 562 (1977), the court accepted review but did not reach the merits of the ballot title. Instead, the court confined its review to the constitutionality of former RCW 29.79.060, which permitted only the initiative sponsor to challenge the Attorney General's ballot title. Finding the statute unconstitutional, the court reversed the trial court's dismissal of the opponents' challenge petition and remanded the case for a decision on the merits. The present case is easily distinguishable because it involves no constitutional issue.

Nonetheless, the court's "constitutional power of review cannot be abridged by legislative enactment." *State ex rel. Cosmopolis Consol. Sch. Dist. 99 v. Bruno,* 59 Wn.2d 366, 369, 367 P.2d 995 (1962). This court has the constitutional power "to issue writs of mandamus, review, prohibition, habeas corpus, certiorari and all other writs necessary and proper to the complete exercise of its appellate and revisory

---

[3]The writ procedures authorized by these statutes have been superseded by the discretionary review procedures in the Rules of Appellate Procedure. *See* RAP 2.1(b), 18.22(b).

jurisdiction." In addition, the court has "appellate jurisdiction in all actions and proceedings". Const. art. 4, § 4. With respect to appeals, as distinguished from writs, however, Const. art. 4, § 4 "is not self–executing" but "'receives its vitality from legislative enactment.'" *Bishop v. Illman,* 9 Wn.2d 360, 361, 115 P.2d 151 (1941), quoting *Robison v. LaForge,* 170 Wash. 678, 17 P.2d 843 (1932). Thus, there is no statutory right to appeal from a ballot title decision.

## DISCRETIONARY REVIEW

The appellate rules permit discretionary review of any trial court action not appealable as a matter of right "[u]nless otherwise prohibited by statute or court rule . . ." RAP 2.3(a). As discussed above, RCW 29.79.060 prohibits appeal from the superior court's decision regarding ballot title challenges.

Appellants argue that despite the statutory bar, the scope of review for the appeal of their motion to intervene would include the Superior Court's ballot title decision. We disagree. The rules provide in part that an appellate court "will review a trial court order or ruling not designated in the notice . . . if (1) the order or ruling prejudicially affects the decision designated in the notice . . ." RAP 2.4(b). The ballot title decision did not prejudicially affect the order denying petitioners' motion to intervene; it preceded, and is independent of, the intervention decision.

Case law does not require a contrary result. *See Adkins v. Aluminum Co. of Am.,* 110 Wn.2d 128, 750 P.2d 1257, 756 P.2d 142 (1988). As we pointed out in *Adkins,* RAP 2.4(b) was designed in part to avoid a trap for the unwary. Under prior rules, failure to appeal an appealable order could prevent its review upon appeal from the final judgment. Because of difficulty in determining which orders are appealable, RAP 2.4(b) includes all "appealable orders within the scope of review." 110 Wn.2d at 134. In this case, the scope of review does not include the Superior Court's order on the ballot title decision because that decision was not appealable. In addition, the appellants were not a party

in the ballot title decision case; only parties may seek review under RAP 2.4(b). RAP 3.1.

## INHERENT POWER OF REVIEW

■ Despite the unavailability of either direct or discretionary review, we may, in unusual circumstances, exercise our inherent power of review to determine if the trial court's decision is arbitrary, capricious, or contrary to law. *Marino Property Co. v. Port Comm'rs of Port of Seattle,* 97 Wn.2d 307, 644 P.2d 1181 (1982).

■ We have consistently defined arbitrary and capricious to mean "'willful and unreasoning action, without consideration and in disregard of facts or circumstances.'" *Equitable Shipyards, Inc. v. State,* 93 Wn.2d 465, 474, 611 P.2d 396 (1980), quoting *DuPont–Fort Lewis Sch. Dist. 7 v. Bruno,* 79 Wn.2d 736, 739, 489 P.2d 171 (1971). Under that standard of review, the trial court's decision was neither arbitrary nor capricious. The Superior Court Judge merely approved a ballot title presented by both the Attorney General and Citizens. While there are other reasons for so holding, the Attorney General's acceptance of the new ballot title makes it impossible to find the judge's action arbitrary or capricious. It is irrelevant that the Attorney General later reversed his position.

We recognize that the Oregon Supreme Court has reviewed ballot titles for sufficiency and has rewritten those found insufficient. However, the Oregon statute governing ballot title appeals differs dramatically from ours in two important respects. First, rather than providing for lower court review, it allows any person dissatisfied with a ballot title to petition the Supreme Court directly to seek a different title. Or. Rev. Stat. § 250.085(1), (2). Oregon's legislature intended the statutory procedures to be the exclusive remedy; therefore, only the Oregon Supreme Court can review and correct a defective ballot title. *Ecumenical Ministries v. Paulus,* 298 Or. 62, 688 P.2d 1339 (1984).

Second, the Oregon statute directs the Supreme Court to review the title for substantial compliance with the

requirements of Or. Rev. Stat. §§ 250.035 and 250.039 and to certify a title meeting the standards to the Secretary of State. Or. Rev. Stat. § 250.085(4); *see also GTECH Corp. v. Roberts,* 300 Or. 539, 714 P.2d 610 (1986). The directive to the Oregon Supreme Court is not to review the Attorney General's action to determine whether it was arbitrary or capricious, but rather to review the ballot title itself for substantial compliance. Where that court can approve neither the Attorney General's nor the challenger's proposed ballot title, it must draft one that conforms to the statutory requirements. *McKibben v. Paulus,* 292 Or. 729, 642 P.2d 1155 (1982).

Because Oregon's standard of review is different, its case law cannot justify our reaching the merits of a ballot title decision.

## III

Petitioners also argue that this court can reach the merits of the ballot title decision in their original action against the Superior Court Judge, the Secretary of State, and the Attorney General. As the basis of the original action, the petitioners claim the Superior Court lacked jurisdiction to review legislatively enacted ballot titles. The petitioners seek a writ of prohibition directed to the Secretary of State to prevent him from certifying the ballot title approved by the Superior Court.

The Washington State Constitution, article 4, section 4, gives this court the power to issue extraordinary writs. Interpreting statutes, we have long characterized the issuance of a writ of prohibition as a drastic measure, one to be used only when two factors coincide:

(1) Absence or excess of jurisdiction, and (2) the absence of a plain, speedy, and adequate remedy in the course of legal procedure. The absence of either one precludes the issuance of the writ.

*State ex rel. Ernst v. Superior Court,* 198 Wash. 133, 137, 87 P.2d 294 (1939) (interpreting Rem. Rev. Stat. §§ 1002,

1027–28, superseded by RCW 7.16.040, 7.16.290–.300, superseded in part by RAP 2.1(b)). In this case, the Superior Court had jurisdiction to hear the ballot title challenge, and the appellants had an adequate remedy in the course of legal procedure. They simply failed to use it in a timely manner.

### SUPERIOR COURT JURISDICTION

Petitioners challenge the Superior Court's subject matter jurisdiction, claiming that RCW 29.79.290 does not provide for judicial review of the Attorney General's ballot titles for legislatively enacted measures. However, they neither cite authority nor make persuasive argument for their position.

RCW 29.79.290 directs the Secretary of State to obtain from the Attorney General ballot titles for legislative measures "in the manner provided for obtaining ballot titles for initiative measures." RCW 29.79.040 provides the "manner" for obtaining ballot titles for initiatives and referendums. Within 7 days after receipt of an initiative, the Attorney General must formulate a ballot title and file it with the Secretary of State. The title must not exceed 20 words, may not be argumentative, and "may be distinct from the legislative title of the measure". The Attorney General's ballot title "shall be the ballot title of the measure unless changed on appeal." RCW 29.79.040. Within 5 days of the Attorney General's filing the ballot title, "any person" may appeal by petitioning the Superior Court for Thurston County. RCW 29.79.060.

The manner provided for obtaining ballot titles includes the appeal process. Appellants err by reading RCW 29.79-.290 in isolation. That section refers to the "manner"; the "manner" directives of RCW 29.79.040 refer to the appeal process in RCW 29.79.060. It would make little sense to follow some, but not all, of the "manner" directives in RCW 29.79.040. The Superior Court for Thurston County has jurisdiction to hear ballot title challenges for legislatively enacted measures.

AVAILABLE ADEQUATE REMEDY

Generally, procedures for original actions under RAP 16.2 may not be used to initiate review of a trial court decision. 3 L. Orland, Wash. Prac., *Rules Practice,* Committee Comment, at 350 (3d ed. 1978). Instead, the procedures for discretionary review must be used. However, only a "party" may seek discretionary review. RAP 2.3(a). Although petitioners were not a party to the ballot title challenge, they could have intervened as a matter of right had they attempted to do so before judgment. Whatever their reasons, they were aware of the proceedings and chose not to intervene. They cannot now be heard to complain that they had no adequate remedy at law.

## IV

Citizens requests attorney fees for having to assume the duties of the Attorney General after he moved to reconsider the Superior Court's ballot title decision. The appellants counter that RCW 29.79.060 provides for appeal without costs to either party, and that Washington has not adopted the "Private Attorney General" doctrine. *Blue Sky Advocates v. State,* 107 Wn.2d 112, 727 P.2d 644 (1986).

The statutory provision states the process for obtaining superior court review of the Attorney General's ballot title decision. The process includes the time and place for filing a challenge, service of process, and time limitations for superior court review. The provision concludes: "*Such appeal shall be heard without costs to either party.*" (Italics ours.) RCW 29.79.060. However, the provision also states that "[t]he decision of the superior court shall be final." RCW 29.79.060. On its face, the statute does not purport to deny costs if a party attempts to appeal the superior court decision.

Appellants correctly contend that Washington has not adopted the Private Attorney General doctrine. This State follows the American rule, requiring each party to pay his or her legal fees regardless of the outcome of the case. However, the "traditional equitable grounds for an

award of fees are available." *Blue Sky Advocates v. State,* 107 Wn.2d at 122. Nonetheless, this court need not consider whether this case would fall under one of the equitable exceptions to the American rule. While its argument may have some merit, Citizens failed to file the fee affidavit required by RAP 18.1. Therefore, we dismiss Citizens' claim on procedural grounds.

CONCLUSION

The Superior Court for Thurston County has jurisdiction to hear appeals for both popular initiatives and legislatively enacted measures. The decision of the Superior Court is final and not appealable. This court will review the Superior Court's decision only if it is arbitrary and capricious or contrary to law. Because the decision in this case was neither arbitrary and capricious nor contrary to law, we decline to review the merits. The trial court's order denying intervention is affirmed, and petitioners' request for a writ to the Secretary of State is denied.

CALLOW, C.J., and DOLLIVER, DORE, PEARSON, DURHAM, and SMITH, JJ., concur.

ANDERSEN, J. (dissenting)—What the majority is saying here is that a trial court can allow an argumentative and misleading ballot title to go on the ballot and this court is powerless to do anything about it. I strenuously disagree.

Both Initiative Measure 97 and the legislative alternative, 97B, comprehensively address the hazardous waste problem in the State of Washington. Initiative Measure 97 has 26 sections in it; Alternative Measure 97B has 70. Some of the provisions in the two measures are essentially the same but many are not.

The ballot title for Initiative 97 reads as follows:

Shall a hazardous waste cleanup program, partially funded by a 7/10 of 1% tax on hazardous substances, be enacted?

In view of the numerous differences between the two measures, the Attorney General utilized a parallel construction

for the ballot titles. Consequently, Alternative 97B was entitled as follows:

> Shall the legislatively enacted hazardous waste cleanup program, which includes an 8/10 of 1% tax on hazardous substances, be retained?

The title for Alternative 97B was then changed by the trial court. It no longer parallels the Initiative 97 title and now reads as follows:

> Shall the legislature's cleanup program, with 0.8% hazardous substance tax *raising less money,* with less coverage of petroleum, be retained?

(Italics mine.)

Whether Alternative 97B would ultimately raise "less money" than 97, as the 97B title now declares, is a hotly disputed issue of fact; the tax rate in 97B is greater than the tax rate in 97, but the tax base is smaller. Neither measure designates or otherwise identifies a precise number of dollars which would be raised by the tax. Nor does either measure provide for any revision of the tax rate if the revenue either exceeds or falls short of a particular dollar total. It seems obvious from a reading of the two measures that the amount of revenue raised by either will probably depend in large part on future happenings in the marketplace with reference to hazardous substances, particularly as to whether the quantity or value of petroleum exports increases or decreases.

Thus, which of the two measures would raise the most in taxes can only be guessed at or, at best, "guesstimated". Yet the ballot title approved by the trial court determined *as a matter of law* that Alternative 97B would raise "less money" than Initiative 97! The courts should *not* allow ballot titles to be used which are tilted either for or against *any* measure. To do so is to run the very serious risk of misleading the voters who justifiably rely on official ballot titles. The importance of this could not be more clearly expressed than this court recently did in the case of *In re Ballot Title for Initiative 333,* 88 Wn.2d 192, 198, 558 P.2d 248, 559 P.2d 562 (1977):

*We can safely assume that not all voters will read the text of the initiative or the explanatory statement. Some voters may cast their votes based on the ballot title as it appears on their ballots. Thus, the outcome of the vote may be affected by the tenor of the ballot title.*

(Italics mine.) The proponents of these two measures should be permitted to take their respective cases to the people on the issue of which measure raises the most money and which raises the least. Then the electorate could decide that issue. Instead, any meaningful debate on that issue was foreclosed by the manner in which the ballot title approved by the trial court was phrased.

The law of this state requires that a ballot title be true and impartial; it "'. . . shall not be intentionally an argument, nor likely to create prejudice, *either for or against* the measure.'" *In re Ballot Title for Initiative 333, supra* at 196. *See also* RCW 29.79.040. The 97B ballot title approved by the trial court fails this test; it is both argumentative *and* misleading.

The issue before this court is *not* which of the two measures, Initiative 97 or the legislative alternative, 97B, is the most meritorious. That is for the people to decide by their ballots. The issue, rather, *is* whether or not the ballot title for 97B is fair. For the reasons stated, the ballot title is not fair.

Hazardous waste cleanup and the "superfund" are matters of great importance to the people of the State of Washington. The two alternatives on the ballot for decision by the voters are complex and hotly contested. It is unacceptable to hold, as the majority does, that as the Supreme Court of this State we have no power to review and correct an argumentative and misleading ballot title placed on the ballot by a trial court.

I would hold that this court *does* have original jurisdiction to review the trial court's order and correct the Alternative 97B ballot title. This jurisdiction and authority is based on the principle enunciated in *State ex rel. O'Connell v. Meyers,* 51 Wn.2d 454, 459–60, 319 P.2d 828 (1957),

quoting *State ex rel. Malmo v. Case,* 25 Wn.2d 118, 123, 169 P.2d 623, 165 A.L.R. 1426 (1946), wherein it is declared that

"'. . . the established rule seems to be that as original jurisdiction is conferred in order that the court of highest authority in the state should have the power to protect the rights, interests, and franchises of the state, and the rights and interests of the whole people, to enforce the performance of high official duties affecting the public at large, . . . the court is vested with a sound legal discretion to determine for itself, as the question may arise, whether or not the case presented is of such a character as to call for the exercise of its original jurisdiction. . . .'"

*See also State ex rel. Kurtz v. Pratt,* 45 Wn.2d 151, 157, 273 P.2d 516 (1954); *State ex rel. Seymour v. Superior Court,* 168 Wash. 361, 12 P.2d 394 (1932); *In re Ballot Title for Initiative 333, supra.*

I would have ruled as follows in this case:[4] grant review; reverse the trial court's order changing the Attorney General's ballot title for Alternative Measure 97B; and reinstate the Attorney General's original Alternative Measure 97B ballot title.

Thus, I dissent.

BRACHTENBACH, J., concurs with ANDERSEN, J.

Reconsideration denied March 22, 1989.

---

[4]This case was actually decided by this court on August 15, 1988. It was on that date, pursuant to the decision of a majority of this court, that the following order was entered herein by the Chief Justice:

Pursuant to a vote of the majority of the Court,

IT IS HEREBY ORDERED:

(1) The petition against the state officers is denied;

(2) Further relief from the trial court's decision is likewise denied; and

(3) Explanatory opinions will be issued in due course.