[No. 12211-1-II.  Division Two.  August 30, 1990.]

MICHELLE M. GIBSON, ET AL, *Respondents*, v. THE CITY OF TACOMA, *Respondent*, THE DEPARTMENT OF TRANSPORTATION, *Appellant*.

---

Kenneth O. Eikenberry, Attorney General, and Rene D. Tomisser, Assistant, for appellant.

M. Lawrence Ross, for respondent Tacoma.

Robert C. Van Siclen and Smythe & Van Siclen, for respondent Gibson.

Todd W. Gardner and Arthur D. Swanson P.S., for respondent Hurst.

PETRICH, A.C.J.—Michelle Gibson and Jetta Hurst brought this action against the City of Tacoma and the State Department of Transportation for damages they suffered as a result of a mudslide that hit their truck on State Route 509, commonly known as Marine View Drive. The slide occurred inside the Tacoma city limits. The State appeals the trial court's dismissal of the City at the close of the plaintiffs' case and denial of the State's motion for partial summary judgment. The State also appeals the trial court's increase of Gibson's noneconomic damages awarded by the jury. We reverse the order dismissing the City and the order increasing Gibson's damages and affirm in all other respects.

Gibson's and Hurst's lawsuit against the City and the State alleged negligence in the design, construction and maintenance of Marine View Drive in the area of the accident. The State cross–claimed against the City, seeking contribution for the City's comparative fault. The State also moved for partial summary judgment concerning the claims that it had negligently failed to maintain the embankment adjacent to Marine View Drive or negligently failed to undertake construction projects beyond the portion of the highway used for highway purposes. Its motion was denied.

The record discloses that Gibson and Hurst were injured when their truck, driven by Hurst, was hit by a mudslide at about 1:30 a.m. on October 12, 1986. The driver of the vehicle following Gibson and Hurst testified that he saw the mudslide come down from the "hill" and land on their truck.

Marine View Drive has been part of the state highway system since 1944. In 1953, under contract with the State, referred to as General Maintenance Agreement 13 (GM 13), the City assumed responsibility for the maintenance of Marine View Drive within the Tacoma city limits. GM 13 provides that the City shall perform the maintenance "without further instructions" in a manner satisfactory to the State's District Engineer.

In 1967, the State widened and resurfaced the roadway in the area where the accident occurred. The plaintiffs' expert witness, Gerald Cysewski, a civil and structural engineer, testified that the slope of the embankment was made steeper when the road was widened. He stated that the embankment in that area was unstable, and that widening the roadway toward the embankment made the area more hazardous to drive through. He testified that although the roadway should not have been widened toward the embankment, a number of devices were available to the State to "repair" the situation. For example, a gabion or concrete barrier with an entrapment area could have been constructed. He stated his opinion that some device should have been placed along the roadway to protect it from slides. He also testified that he had observed accumulated slough in the ditch area along Marine View Drive, which would leave less area for the entrapment of debris in a mudslide.

Gibson sustained a crushed left foot, four fractures in her pelvis, a head injury, and whiplash from the accident. She was hospitalized for 9 days after the accident, and underwent surgery twice on her left foot and once on her pelvis. She testified that she continues to experience pain in her

foot and her pelvis. She also suffers from headaches and takes medication to treat them.

At the close of the plaintiffs' case, the trial court granted the City's motion for directed verdict. In addition to dismissing Gibson's and Hurst's claims against the City, the trial court dismissed the State's cross claim.

The jury returned a verdict for the plaintiffs against the State. It awarded $72,812 to Gibson and $38,262 to Hurst. Upon Gibson's motion for judgment n.o.v. or for a new trial, the trial court increased the award of Gibson's noneconomic damages by $30,000.

The State first assigns error to the trial court's order granting the City's motion for a directed verdict. The trial court held that the State had a duty under RCW 47.24 to maintain the roadway and the embankment, while the City's duty to maintain the roadway was contractual. The trial court stated that the City owed a duty to the State under GM 13, and not to the motoring public. The trial court recognized the possibility that the City was negligent to allow slough to accumulate in the ditch area. However, the trial court dismissed the State's cross claim against the City because, in its view, the City's obligation, if any, arose solely from the contract (GM 13) and the cross claim was not based on the contract.

■ A directed verdict is proper when, viewing the evidence and all reasonable inferences therefrom in a light most favorable to the nonmoving party, no substantial evidence is presented to create a prima facie case. *Boeing Co. v. Sierracin Corp.,* 108 Wn.2d 38, 67, 738 P.2d 665 (1987).

■ The determination of whether the State's duty over the roadway includes the embankment, or whether the duty over the embankment is held by the City, involves a problem of statutory construction. The primary objective of statutory construction is to carry out the intent of the Legislature. That intent is to be determined primarily from the language of the statute. If the language is plain and unambiguous, no construction is allowed; the meaning must be

derived from the wording of the statute itself. *State v. Wilbur*, 110 Wn.2d 16, 17, 749 P.2d 1295 (1988).

RCW 47.24.010 provides in part:

> The transportation commission shall determine what streets . . . in any incorporated cities and towns shall form a part of the route of state highways . . . and all such streets, including curbs and gutters and street intersections . . . shall thereafter be a part of the state highway system and as such *shall be constructed and maintained by the department of transportation* from any state funds available therefor . . ..

(Italics ours.)

RCW 47.24.020 provides in part:

> The jurisdiction, control, and duty of the state and city or town with respect to such streets shall be as follows:
>
> . . . .
>
> (2) The city or town shall exercise full responsibility for and control over any such street beyond the curbs and if no curb is installed, *beyond that portion of the highway used for highway purposes.*

(Italics ours.)

The trial court misinterpreted these provisions of RCW 47.24 when it ruled that the State had a statutory responsibility over the embankment. First, although the State has the responsibility for construction and maintenance over streets that are designated part of the state highway system, RCW 47.24.010, the City has the jurisdiction, control, and responsibility over such streets *beyond that portion used for highway purposes,* RCW 47.24-.020(2). "Highway purposes" is not defined in the statute, but we believe it reasonably excludes embankments adjacent to the highway.

Second, RCW 47.24.020(6)[1] expressly places upon the State the responsibility for the "stability of the slopes of cuts and fills and the embankments within the right of

---

[1]RCW 47.24.020(6) provides in part: "In cities and towns having a population of fifteen thousand or less according to the latest determination of population by the office of financial management, the state, when necessary for public safety, shall assume, at its expense, responsibility for the stability of the slopes of cuts and fills and the embankments within the right of way to protect the roadway itself."

way to protect the roadway itself" in cities and towns with populations under 15,000. We infer the intent of the Legislature to be that cities with populations above 15,000, such as Tacoma, retain responsibility for the stability of cuts, fills and embankments. *See Kreidler v. Eikenberry,* 111 Wn.2d 828, 835, 766 P.2d 438 (1989) (express mention of one thing implies the exclusion of another). Moreover, such a reading of RCW 47.24.020(6) is consistent with RCW 47.24.020(2).

Because the City has the statutory responsibility over the embankment adjacent to Marine View Drive, the trial court erred in granting the City's motion for a directed verdict. The jury could have found that the City was negligent to some extent in maintaining the stability of the embankment from which the mudslide originated.

The remainder of this opinion has no precedential value. Therefore, it will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040.

REED and WORSWICK, JJ., concur.

Review denied at 116 Wn.2d 1002 (1991).